## No. 79SC18

### Peyton F. Perry v. Bruce B. Brundage

(614 P.2d 362)

Decided July 14, 1980.   Opinion modified and as modified rehearing denied · August 18, 1980.

_____

Gorsuch, Kirgis, Campbell, Walker and Grover, Charles E. Rhyne; Bosworth & Slivka, Arthur H. Bosworth II, for petitioner.

Holland & Hart, R. Brooke Jackson, Richard G. Caldwell, for respondent.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

We granted certiorari to review the opinion of the court of appeals in *Brundage v. Perry,* 41 Colo. App. 526, 592 P.2d 6 (1978). The trial court voided a real estate contract on the ground that it constituted an unreasonable restraint on alienation. The court of appeals reversed the trial court's ruling and also held that the contract did not violate the rule against perpetuities. We agree that the trial court erred in voiding the contract but reach this result on the basis of rationales which we believe are more appropriate in resolving the issues of this case.

## I.

In 1968 respondent Brundage purchased a tract of land in Arapahoe County and formed the Sierra Vista Subdivision, which was designed for single family residences. Brundage received financial support from three others who thereupon joined with Brundage in executing a nominee agreement whereby each of the four would own one of the lots for his personal use. According to the agreement, Brundage became the nominee-fiduciary for three of the subdivision lots to be held for the three investors. Brundage's duties were to contribute financially, to complete the purchase of the tract, and to sell the lots.

According to the nominee agreement, Brundage was to be the nominal owner of record of the tract, but was to make the three other investors the owners of record of their three lots as soon as practicable. More importantly, the agreement provided that if any of the four individuals wished to sell his lot to a non-investor before the termination of the nominee agreement, the other investors would have the right of first refusal exercisable

in a designated order of priority. Brundage had the highest priority.

In 1970, before the termination of the nominee agreement, Mr. Hurth, one of the three investors, desired to sell his lot to the petitioner, Mr. Perry. The two agreed on a selling price of $16,500, but first the sale of the lot had to be offered to Brundage and the other investors.

Through negotiations, Brundage entered into two separate agreements whereby he would retain the right to purchase the lot at a later date. He first entered into an agreement with the other investors that they would irrevocably waive their right of first refusal to buy the lot. The second, and more complicated, was an agreement between Perry, Brundage and Hurth, which has given rise to the present dispute. The Hurth lot was then transferred to Perry.

The agreement stated that in consideration for the present waiver of Brundage's right of first refusal, Perry could purchase the lot for the purpose of constructing a residence, but that if Perry failed to build a residence on the lot, Brundage could repurchase it at a later date for the same price of $16,500 which Perry would pay to Hurth for the lot. The relevant portions of that agreement provide:

2. Perry agrees that Brundage, his heirs, personal representatives and assigns shall have a right to repurchase the premises under the following circumstances:

(a) If, at the expiration of six years from the date of the warranty deed from Brundage to Perry, a residence has not been constructed on the property and a certificate of occupancy has not yet been issued to Perry by the appropriate governmental authority, or

(b) If Perry desires to sell the premises before a residence has been constructed thereon and [before] such certificate of occupancy has been issued by the appropriate governmental authority (in which event, Perry must first give Brundage a written notice of the same).

In either case the purchase price shall be equal to the total cost to Perry of the premises. The written notice to Brundage shall be sent to him at 6830 South Logan Street, Littleton, Colorado, or at such other address as Brundage may from time to time give to Perry. Brundage shall have the period of 21 days following the expiration of such six-year period or receipt of such notice, as the case may be, in which to elect to repurchase the premises on the above described terms. If Brundage elects to so repurchase, Brundage must give written notice of such election to Perry at 10 Emerson Street, Denver, Colorado, or such other address as Perry may from time to time give to Brundage. If Brundage elects not to repurchase or does not tender his notice of intention to repurchase to Perry within such 21-day period, then Perry may for a period of six months following the end of such 21-day period, sell the premises to any party of his choosing. In the case of a proposed sale under circumstances covered by paragraph 2(b) above, if no sale occurs within such six-month period,

notice in the above manner must again be given to Brundage prior to any sale of the property. It is understood that, upon completion and occupancy by Perry of a permanent residence upon the premises, this agreement with respect to repurchase of the premises shall no longer be in force and effect. 3. A sale of the premises by Perry other than in accordance with the repurchase provisions of this agreement shall be void and of no effect and the purported purchaser thereunder shall take no interest in the premises.

When six years had passed and Perry had not built or obtained a certificate of occupancy for a residence on the lot, Brundage attempted to exercise his right to purchase the lot under clause 2(a) for the sum of $16,500. By this time, the lot had greatly appreciated in market value to the sum of $55,000,[1] and Perry refused to sell the lot to Brundage.

Brundage filed suit in the trial court seeking specific performance of the agreement. At trial to the court, Perry advanced several theories in defense of his refusal to sell: (1) The agreement was void for a lack of consideration; (2) The agreement constituted an unreasonable restraint on alienation; and (3) The agreement violated the rule against perpetuities. The trial court found in favor of Perry on his second theory of defense, thereby finding it unnecessary for it to rule on the remaining theories.

The court of appeals reversed the trial court, holding that the agreement which Brundage was seeking to enforce did not constitute an unreasonable restraint on alienation. In addition, the court of appeals found that clause 2(a), the option to purchase, operated for only six years and twenty-one days, thereby not violating the rule against perpetuities.

## II.

The question before this court is the validity of the restrictions placed upon the transfer of the property from Hurth to Perry by the three-way agreement between Hurth, Brundage and Perry. The validity of that agreement is subject to two well-known doctrines of property law: (1) the rule against perpetuities, and (2) the rule against unreasonable restraints on alienation.

The nature of the restrictions placed upon the transfer of the property in fee to Perry involved two separate and distinct interests. The first, created by clause 2(a) and the subsequent explanatory language, was a purchase option conditioned on Perry's failure to construct and obtain a certificate of occupancy for a residence on the property. The second, created by clause 2(b) and the related provisions was a preemptive right to purchase which was triggered by Perry's desire to sell the property to a third person.

The option right became exercisable only at the end of six years and then only for a period of twenty-one days. The preemptive right, on the

---

[1] By the time of trial, the property was valued at $75,000.

other hand, was much more extensive. This interest required Perry to first offer the property to Brundage at the fixed price of $16,500 before he could sell the property to a third person. If Brundage chose not to exercise this right, Perry would have to reoffer the property to Brundage each time he wished to sell unless he could consummate a sale within six months of Brundage's decision not to exercise his right.

### III.

■ The rule against perpetuities, as stated in its most basic form, provides:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

*Smith v. United States National Bank of Denver,* 120 Colo. 167, 207 P.2d 1194 (1949), *quoting Gray, Rule Against Perpetuities.* This rule applies to both options and preemptive rights, whether in the grantor or third persons. *Atchison v. City of Englewood* 170 Colo. 295, 463 P.2d 297 (1969). *See also IV Restatement of the Law of Property* §§ 393, 394 & 413 at 2444.

■ Here, the purchase agreement reserved alternative rights in Brundage. The option right clearly does not violate the rule because it must be exercised, if at all, within six years and twenty-one days from the date of its creation. Thus, the court of appeals was correct in finding that clause 2(a) did not violate the rule.

■ However, the inquiry does not end with the application of the rule only to clause 2(a), for there is also a second purchase right under clause 2(b). Even though Brundage exercised his option right under clause 2(a) and not his preemptive right under 2(b), consideration must be given to the perpetuities question as it relates to clause 2(b). Although a future interest which is void under the rule does not necessarily affect the remainder of the interests created by the transfer, in certain circumstances, any part of or the entire transfer as provided for may also be declared void under the doctrine of "infectious invalidity." *See IV Restatement of the Law of Property* §§ 402 and 403; *VI American Law of Property* §§ 24.47-24.52.

■ Here, the preemptive right under clause 2(b) violates the rule against perpetuities. *Atchison, supra.* It creates an interest which will terminate only upon the occurrence of one of two events which may never take place: the construction and occupation of a house on the property by Perry, or his ability to consummate a transfer of the property to a third person within six months after Brundage has decided not to exercise his preemptive right. Contrary to Brundage's argument in this court, this preemptive right does not terminate on the death of Perry because clause 7 of the agreement provides: "The rights and obligations of the parties hereto shall inure to their heirs, personal representatives, successors and assigns." Thus, the interest may vest after the lives in being plus twenty-

one years.

We come then to the application of the "infectious invalidity" doctrine to the present case. Where a transfer is restricted by independent and alternative interests, and one interest is void as against the rule, the other is not likewise void as long as that interest is itself valid. *See VI American Law of Property* § 24.49. Here, there were two alternative interests which acted independently of one another. We hold that the invalidity of the preemptive right did not infect the validity of the option right provided in 2(a) under which Brundage brought this action. *Cf. First & C Corp. v. Wencke,* 253 Cal. App.2d 719, 61 Cal. Rptr. 531 (1967) (Invalidity of a year-to-year lease provision reserved in the vendor did not infect the validity of the tenancy at will provision also reserved in the vendor.).

## IV.

"The common law doctrine of restraints on alienation is part of the common law in Colorado" and prohibits *"unreasonable restraints."* *Malouff v. Midland Federal Savings and Loan Assn.,* 181 Colo. 294, 509 P.2d 1240 (1973); *see* section 2-4-211, C.R.S. 1973. This doctrine involves the determination of the validity of a future restraint on property transfer when weighed against the public policy that property should be freeley alienable. The test for the validity of a restraint was adopted by this court in *Malouff, supra:*
"We subscribe to the view that the question of the invalidity of a restraint depends upon its reasonableness in view of the justifiable interests of the parties."
In applying this test, we must look at the totality of the circumstances taking into account the respective interests of the parties and the duration and nature of the restraint used to enforce those interests.

The option agreement under 2(a) on its face is not a classic restraint on alienation. Classic restraints generally place a limitation upon the owner's right to sell the property to a third person. Here, the option right under 2(a) is not triggered by Perry's desire to sell the property. Nevertheless, it is a restraint on alienation because it creates a limitation on Perry's right to freely alienate the property during the period of the option. *See VI American Law of Property* § 26.66 at 509.

There can be little question that Brundage had a justifiable interest in seeing that the property was developed for residential purposes; he was the primary force in the development of the subdivision and was a resident thereof. He had already attempted to protect his and the other investors' interests by including a right of first refusal clause in the original nominee agreement. As the court of appeals correctly noted, Brundage surrendered this right in exchange for the three-way agreement which included both

the option and preemptive rights with Perry.[2]

In order to protect his interest, Brundage was able to prevent Perry from purchasing the property for land speculation purposes by entering into this agreement. Yet, it still provided Perry with the ability to construct a house, thereby terminating any right to purchase in Brundage. Under clause 2(a), the restraint took the form of a forfeiture restraint[3] which terminated at the end of six years and twenty-one days. Perry, of course, agreed to this restraint so that Brundage would not exercise his right of first refusal on the sale from Hurth to Perry. When these justifiable interests and the limited duration and form of restraint are weighed against any possible adverse effect upon public policy, we find such restraint to be reasonable and enforceable.

The judgment of the court of appeals is affirmed.

---

[2] However, the court of appeals incorrectly viewed this as the consideration for the restrictive rights reserved in Brundage. Although the agreement was separate from the deed which transferred the property and contained the signature of Brundage, it was merely an agreement between Hurth and Perry defining the restrictions on the transfer of the property. Thus, the consideration for Perry's $16,500 was the property with the restrictions enforceable by Brundage. *See Easterly v. Hall,* 182 S.E.2d 671 (S.C. 1971).

[3] *See IV Restatement of the Law of Property* §§ 404(1)(c) and (4).