[No. 46697.   En Banc.   December 31, 1980.]

ROBROY LAND COMPANY, INC., *Petitioner,* v. BONNIE
PRATHER, *Individually and as Personal
Representative,* ET AL,
*Respondents.*

*Dellwo, Rudolf & Schroeder, P.S.,* by *Richard J. Schroeder,* for petitioner.

*Murray, Scott, McGavick, Gagliardi & Graves,* by *Robert L. Beale,* for respondents.

HICKS, J.—The issue in this case is whether either the rule against perpetuities or the rules against restraints upon alienation invalidate the following agreement:

> We, ISAAC W. PRATHER and BONNIE A. PRATHER, his wife, for and in consideration of Ten Dollars ($10.00) paid to us by ROBERT C. ROBBINS and ISABEL FAYE ROBBINS, his wife, the receipt whereof is hereby acknowledged, do hereby grant to them and to their heirs, personal representatives and assigns, the first right of refusal of purchasing the following described real estate in Thurston County, Washington:[1]

---

[1]The balance of the agreement reads as follows:

"The northwest quarter of the southwest quarter, and the southwest quarter of the southwest quarter, and the southeast quarter of the southwest quarter of Section 20, Township 18 North, Range 2 West, W.M.

in the event that we, at any time, elect to sell the above described property. In the event that we elect to sell the above described property, we will notify the optionees in writing of any bona fide offer which we have received and shall allow them sixty (60) days to purchase the property on terms equal to the third party offer, or if no acceptable offer of purchase has been made, we will communicate our desire to sell to the optionees and will allow them a total of sixty (60) days to purchase the property for the fair market value at the time we elect to sell.

"The rights hereby granted shall terminate upon refusal to purchase by the optionees or by the expiration of the appropriate time period indicated above.

The Robbins' recorded the agreement in the office of the Thurston County Auditor and thereafter in December 1974, assigned their interest to Robroy Land Company, Inc. The assignment was also recorded in the office of the Thurston County Auditor.

Isaac Prather died September 2, 1974. In June 1975, Bonnie Prather, individually, and as administratrix of the estate of Isaac W. Prather, deceased, entered into an earnest money agreement to sell the property to a third party "subject to first right of refusal of R.R. Robbins or assigns for 60 days."

There are disputed matters, not of concern here, with respect to whether appellant Robroy complied with the 60–day limitation to purchase the property. Eventually, however, the property was sold to respondent Manke & Sons, Inc. Robroy brought an action in Thurston County Superior Court to upset the sale.

In the course of considering a motion for summary judgment, the trial court determined that the first refusal agreement upon which Robroy relied was void as violating the rule against perpetuities and the rules against restraints on alienation. Robroy's action was dismissed and it appealed.

The Court of Appeals, Division Two, affirmed the trial court and substantially adopted its memorandum opinion. *Robroy Land Co. v. Prather,* 24 Wn. App. 511, 601 P.2d 992 (1979). We granted Robroy's petition for discretionary review and we reverse.

The rule against perpetuities, concerned with indirect restraints on alienation and remoteness of vesting, invalidates "interests" which "vest" too remotely. The rules against restraints on alienation have as their concern the removal of direct restraints upon the free transferability of vested interests in property.

---

"This option shall be binding upon the heirs, personal representatives or assigns of the optionors.

"DATED at Olympia, Washington, this 3rd day of April, 1970."

The term "interest" is the most general word that can be used to denote any property right in land or chattels. It is frequently used in referring to a property right that is less than complete title. Black's Law Dictionary (4th ed. 1968). "Vest" is to have conferred upon one a right which is complete and consummated, in contrast, for example, to the word "divest" which means to deprive or dispossess one of a right or property. A right vests when it becomes fixed and absolute and is no longer dependent on any contingency. *Heritage Dictionary and Information Book* (1977).

Both the rule against perpetuities and the rules against restraints upon alienation stem from the general policy against withdrawal of property from commerce and both are judge–made law. The formulation of the modern rule against perpetuities began with the *Duke of Norfolk's Case,* 3 Ch. Cas. 1, 22 Eng. Rep. 931 (1681). The origin of the rules against restraints on alienation predated the rule against perpetuities and the rules have since been constantly evolving. Both rules are of English common law origin, which law was in large measure the decisional law of the Washington Territory. The English common law became part of our state law when we were granted statehood. RCW 4.04.010; *Garrett v. Byerly,* 155 Wash. 351, 284 P. 343, 68 A.L.R. 254 (1930). This court had occasion to state the rule against perpetuities and its purpose in *Betchard v. Iverson,* 35 Wn.2d 344, 348, 212 P.2d 783 (1949):

> The rule against perpetuities prohibits the creation of future estates which, by possibility, may not become vested within a life or lives in being at the time of the testator's death and twenty–one years thereafter. Any limitation of a future interest which violates this rule is void. *The purpose of the rule is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation.*

(Italics ours.)

Here, we are concerned with a right in gross, unlimited in duration, of "first refusal" to purchase certain described land at the same price as a third party offer for which the

owner of the property is willing to sell. Should this right be held to violate the above stated rule?

While commentators frequently lump rights of first refusal (often called preemptive options) with ordinary options when discussing such legal devices and the rule against perpetuities, there appears to be a fundamental distinction between them. A preemption differs materially *from an ordinary option*:

> An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre–emption does not give to the pre–emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre–emption, at the stipulated price. Upon receiving such an offer, the pre–emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone.

6 *American Law of Property* § 26.64, at 507 (A. Casner Ed. 1952). *See also Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 853, 441 P.2d 128 (1968).

We are aware that a number of courts, a majority according to Annot., 40 A.L.R.3d 920 (1971), apply the rule against perpetuities to preemptive rights as consistent with the rule's purpose. We are not so persuaded.

■ Clearly, there is no restraint upon alienation under the circumstances of this case, direct or indirect. The marketability of the property remains unfettered.[2] We are in agreement with the statement in Restatement of Property § 413, at 2443, comment on subsection (1) (1944):

> The interference with alienation present in a requirement that a designated person be afforded a reasonable opportunity to meet any offer received from a third person by an owner desirous of selling is so slight that the

---

[2]This applies only to a preemptive right to purchase at a price equal to a *third party offer the owner is willing to accept*. A fixed price preemptive right will frequently have a fettering effect upon property and a market value preemptive right may have such an effect.

major policies furthered by freedom of alienation are not infringed to a degree which requires invalidation. Under these circumstances, the owner has two potential buyers at the same price and is assured of a reasonably prompt culmination of the sale. Such restraints are, therefore, valid.

The Restatement, however, then goes on to state its view that preemptive provisions are analogous to options upon a condition precedent and must comply with the rule against perpetuities insofar as their maximum duration is concerned. The Restatement's position is based upon its rule set forth in section 393 at page 2315. The pertinent language of the rule is:

[A]n option . . . is invalid because of the rule against perpetuities when, under the language and circumstances of the limitation, such option

    (a) may continue for a period longer than the maximum period [lives in being plus 21 years]; and

    (b) would create an interest in land, or in some unique thing other than land, but for the rule against perpetuities.

We reject the view that a preemptive contract of any duration, long or short, creates an interest in land *at the time of its inception.* Even in an ordinary option contract, until the option is exercised, the optionee acquires no equitable estate or interest in the optioned land. W. Walsh, *A Treatise on Equity* § 72, at 360–61 (1930); 77 Am. Jur. 2d *Vendor and Purchaser* §§ 27–29, at 201–11 (1975). The holder of a right of first refusal has far less of an interest in land than the holder of an ordinary option. The preemptioner has no power or right to affect the property in any way until its owner expresses a desire and willingness to sell. At that point the preemptioner has, for the contracted duration, an election (in the instant case, 60 days).

If the preemptive holder elects to purchase the property, a new contract ensues which may give him an interest in land. An election not to purchase, however, does not release a property interest. It is but the exercise of the contract right of first refusal. *See generally* Berg, *Long–Term*

*Options and the Rule Against Perpetuities,* 37 Cal. L. Rev. 1, 235, 419 (1949).

▮ In this case we find persuasive the rationale of the Court of Appeals in *Weber v. Texas Co.,* 83 F.2d 807 (5th Cir.), *cert. denied,* 299 U.S. 561, 81 L. Ed. 413, 57 S. Ct. 23 (1936). There a preemptive right was appendant to an oil and gas lease which ran for a 5–year term and for "'as long as either oil or gas is or can be produced from any well on said land". *Weber,* at 808. The lease extended to the lessee's heirs and assigns. An occasion arose where the preemptioner elected to exercise its preemptive right. It was met with a challenge that the right was void under the rule against perpetuities.

The Fifth Circuit held the contract right was within neither "the purpose of nor the reason for the rule." *Weber,* at 808. The rule against perpetuities, said the court, endeavors to prohibit "fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation . . ." *Weber,* at 808. The court tested the preemptive right with this purpose in mind and found it was unobjectionable because the lessee preemptioner had no power to restrain alienation. Its only right was to accept or reject the reserved right as a "preferred purchaser" whenever the lessor should desire to sell. The *Weber* court was considering practical restraints upon alienation, not just technical legal power to sell.

We find little to distinguish the instant case from *Weber.* In *Weber,* the preemptive right was appendant to a lease, here it is in gross. That distinction seems inconsequential. In both instances, the only right of the preemptioner was, as a preferred purchaser, to accept or reject the opportunity to purchase when the owner of the property decided to sell. We find no restraint upon alienation by the "first refusal" agreement in this case.

For many years the leading treatise in the field of perpetuities and restraints upon alienation was J. Gray, *The*

*Rule Against Perpetuities.* In the fourth and latest edition (1942), edited by R. Gray, in § 330 n.2, p. 363, the editor questions the *Weber* court's conclusion that the preemptive right there concerned did not give an interest within the purview of the rule against perpetuities for the reason that:

> Such an option might render the property, to which it related, less saleable. It was immaterial that no state of facts had arisen in which the option actually had that effect.

As noted above, we prefer the view of the Restatement of Property that a preemptive right, of the kind concerned in this case, does not adversely affect the sale of property to an extent that would put it within the rule against perpetuities or restraints upon alienation.

In the same treatise, section 330.3 n.2, at pages 367–68, however, is a discussion of interest to us which we set forth in part:

> It has often been remarked that the period of lives and twenty–one years is not very appropriate as a limit for the duration of options and other commercial contracts creating future interests in property. Yet it has generally been conceded that some limit is desirable; and no other limit has ever been suggested. The real source of the dissatisfaction with the state of the law respecting options and similar contracts, is the fact that the parties so frequently omit to name any limit for the duration of the contract, although they would usually be willing to do so if the matter were called to their attention. It would perhaps be proper for the Court in such a case to indulge in a presumption that the intention was that the contract should be good only for a reasonable period, not exceeding twenty–one years.

We agree with the above comment regarding contracts without duration. Such contracts should be presumed as intended to last only for a reasonable time. Particularly in commercial matters, as this case is, it seems to us that an effort should be made to effectuate the purpose of the parties, not frustrate it. Here, it will be noted, the parties continued to act to advance the purpose of the preemptive contract through at least one third party earnest money

agreement and submission of the third party offer to the preemptioner (Robroy).

Thus, we have an additional ground for our decision in this case. We hold that the agreement herein, on its face unlimited as to its existence, is presumed to have intended as its duration a reasonable time. We fix no exact limit as to what shall constitute a reasonable time. Each case should be judged on its facts. Clearly, the operative event in this instance occurred well within what may be regarded as a reasonable time.

We call attention to two cases concerning commercial leases that invoke the principle of a "reasonable time." Both leases were challenged under the rule against perpetuities because the beginning dates of the lease terms were not fixed, but were contingent upon matters that by remote possibility might not occur within lives in being and 21 years. In each instance the court construed the lease as beginning within a reasonable time. *See Wong v. Di Grazia,* 60 Cal. 2d 525, 386 P.2d 817, 35 Cal. Rptr. 241 (1963) and *Singer Co. v. Makad, Inc.,* 213 Kan. 725, 518 P.2d 493 (1974).

While both the cited cases concern commercial leases, we are aware of no sound reason why other commercial transactions, otherwise valid, should be frustrated because the time of commencement by remote possibility may run beyond the period of the rule against perpetuities. The rule is a potential trap for the unwary and it serves no obvious social purpose in commercial transactions of which we are aware. We believe that in such "no duration" contracts the time of performance or the commencement thereof should be declared to be limited to a reasonable time rather than declared void at inception. Such a limitation probably does not do violence to what the parties would have included had the matter been brought to their attention at the time the agreement was formulated. By so holding, we believe we more nearly meet the needs of a commercial society than by strictly enforcing the rule against perpetuities as it has come to us from the common law.

The trial court and the Court of Appeals in their resolution of this matter relied heavily upon *Atchison v. Englewood,* 170 Colo. 295, 463 P.2d 297 (1969), 40 A.L.R.3d 904 (1971). In *Atchison,* the preemptive right was identical to the one at issue in this case, *i.e.,* available for exercise only if the owner desired to sell and at the price the owner was willing to sell to a third person. As in the instant case, *Atchison* was a case of first impression in Colorado.

The *Atchison* court, in formulating a rule for Colorado, held the preemptive agreement before it to be invalid. It reasoned, at pages 307–08:

> We have held that before us is an inheritable preemptive right without limit as to time. It is in no manner connected with any land owned by Mr. and Mrs. Atchison. While they reserved one–half of the mineral rights, this interest can be sold at any time; and following a sale there will be no land title interest of record to give any clue as to the identity of future successors in interest to the preemptive right. We feel that at some point in the infinite time at which Englewood might in the future conclude to sell the land, ascertaining and locating the owners of the preemptive right would be an unreasonable task. As a result, there would be a sufficiently unreasonable restraint upon the transferability of the property as to justify imposition of the rule against perpetuities. It may be said that we are stating a rule against alienation and giving it a label of the rule against perpetuities. Be that as it may, the result is the same.
>
> It is to be noted that in *Weber v. Texas Company, supra* the identity of the owners of interests involved could be ascertained—or at least with some reasonable investigation discovered—from the record title to the mineral rights and royalties. Our conclusion might be different here if the ownership of the preemptive right followed the title to designated real property; or, if it were restricted to a limited term found to be reasonable, albeit longer than a life in being plus 21 years. Be that as it may, we rule merely that a contractual right, granted to A and his heirs and assigns, unlimited as to time, to purchase land upon the same terms as the owner could and would sell to a third person, is void.

A comment on *Atchison,* in 47 Den. L.J. 78, 80–81 (1970), notes:

> The opinion is therefore based upon a very narrow proposition, namely, that when
>
>> an inheritable pre–emptive right without limit as to time. . . . [I]s in no manner connected with any land . . . there will be no land title interest of record to give any clue as to the identity of future successors in interest. . . . [And] [a]s a result, there would be sufficiently unreasonable restraint upon the transferability of the property to justify the imposition of the rule against perpetuities.
>
>> . . .
>
> . . . An essential part of the rule is that "there will be no land title interest of record. . . ." The Colorado recording act provides that "[a]ll . . . agreements or other instruments in writing . . . encumbering or affecting the title to real property . . . may be recorded. . . ." This language would seem to be broad enough to make a pre–emption itself recordable in Colorado, and if within the recording act, then not within the Colorado rule. [As formulated by the court in *Atchison.*]

(Footnotes omitted.)

The Washington recording act, RCW Title 65, and particularly RCW 65.04.030,[3] seems not only broad enough to accommodate recordation of preemptive agreements, but in this instance both the agreement and its assignment were recorded by the Thurston County Auditor. And, as a practical matter, the recorded agreement and its assignment were picked up by the title insurance company and were shown in its preliminary report. All parties concerned had knowledge in fact of the agreement and its assignment.

---

[3]RCW 65.04.030 reads in pertinent part as follows:

"Instruments to be recorded or filed. [The auditor] must, upon the payment of his fees for the same, acknowledge receipt therefor in writing or printed form and record in large and well bound books, or by photographic or photomechanical process, the following:

". . .

"He may also, upon the payment of his fees for the same, record or file such other documents or papers as may be requested by the person offering the same for recording or filing."

Further, Bonnie Prather, for herself and as administratrix in conformance with the "first refusal" contract tendered the third party offer to Robroy. That action in itself would seem to affirm that the original preemption agreement was entered in good faith. It was only after the sale of the property to a third party was consummated that it became necessary to circumvent the preemption agreement and the rule against perpetuities was invoked.

Finally, we express our appreciation to the attorneys here involved. They were requested to reargue this case with emphasis upon the applicability of the "wait and see" doctrine to this matter, which they did. In conference following reargument, however, a majority of the court expressed the view that the "wait and see" doctrine should not be utilized in this case.[4]

Reversed and remanded.

UTTER, C.J., and STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

ROSELLINI, J., concurs in the result.

---

[4]The legislature has adopted the "wait and see" doctrine in trust dispositions for Washington. Laws of 1959, ch. 146. RCW 11.98.

Professor Harry Cross commenting on this legislation in 34 Wash. L. Rev. 330, 331 (1959), observed that:

it would be possible for the court to decide the statute reflects a general policy decision by the legislature that the destructive force of the common law rule should be deflected from possible but not probable factual situations, . . .

He notes that other states have done this without the aid of statutes.