PERRITT COMPANY and Imogene K. Mitchell and Bernice Clay, Appellants,

v.

Imogene K. MITCHELL and Bernice Clay and Perritt Company, Appellees.

No. 2–83–038–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 29, 1983.

Rehearing Denied Jan. 26, 1984.

Jennings, Dies & Turner and Frank Jennings, Graham, for appellants.

The Montgomery Law Firm, and Elton M. Montgomery, Graham, for appellees.

Before JORDON, BURDOCK and HILL, JJ.

## OPINION

HILL, Justice

This case involves the rights of the parties to a contract concerning working interests in two oil, gas, and mineral leases. Each party moved for summary judgment based on undisputed facts as contained in affidavits and depositions. The trial court granted a motion for summary judgment for the plaintiffs.

We reverse and render.

One of the plaintiffs was Imogene Mitchell, a widow who lives in Jacksboro, Texas. Sometime before August 1, 1980, she was asked by Harold Inman, a long-time friend, if she would be interested in investing in an interest in an oil, gas, and mineral lease. She decided to buy a ⅟₃₂nd interest in the Gillespie lease from the defendant, Perritt Oil Company, hereinafter referred to as PERCO. She signed a contract with PERCO on August 1, 1980. The contract contained a paragraph reserving the right of first refusal to PERCO in the event of a sale or assignment of Mitchell's interest to a good faith purchaser. The paragraph reads as follows:

PERCO shall have the right to first refusal should you desire to sell or assign any or all of your interest under this agreement or the lease heretofore mentioned. If you decided to sell, PERCO will have the right to purchase your interest under the terms and conditions that any good faith purchaser is willing to purchase your interest for.

Shortly after signing the contract, Mitchell approached Bernice Clay, her good friend and co-plaintiff, and asked her if she would like to participate with her in the Gillespie venture. Clay agreed to do so, and she promptly wrote a check to Mitchell for one-half of the amount that Mitchell had paid for her ⅟₃₂nd interest. Clay's understanding was that she was acquiring a ⅟₆₄th interest in the Gillespie lease.

The Gillespie was at first a dry hole, so that Mitchell was required by the contract to put up additional money. Mitchell paid to PERCO the full amount due from her as one who had a ⅟₃₂nd interest. She was reimbursed for one-half of this amount by Clay.

After investing in the Gillespie lease, Mitchell was approached by PERCO about investing in another lease called the Briley lease. She again purchased a ⅟₃₂nd interest and signed a contract with PERCO. In the Briley lease, the paragraph concerning first refusal reads as follows:

PERCO will have the right to first refusal should you desire to sell or assign any or all of your interest under this agreement or the lease heretofore mentioned. PERCO shall have the right to purchase your interest under the terms and conditions that any good faith purchaser is willing to purchase your interest for.

Shortly after signing this contract, Mitchell again contacted Clay to see if she wished to participate in the Briley lease. Clay chose to participate and again contributed one-half of the cost in exchange for one-half of Mitchell's ⅟₃₂nd interest, which constituted a ⅟₆₄th interest in the lease. Mitchell did not advise PERCO of Clay's participation in either venture. The second Gillespie well and the Briley well both became successful producing wells. Before Mitchell had received written assignment of her ⅟₃₂nd interest, PERCO learned of the Clay participation. PERCO then, relying on the right of first refusal clauses in the contracts, conveyed only a ⅟₆₄th interest in both

the Gillespie and Briley leases to Mitchell, retaining the other ⅟₆₄th interest in each lease. PERCO tendered to Mitchell the same amount that Clay had given her for this same interest. Upon Mitchell's refusal to accept the payment, PERCO paid the money into the registry of the court.

■ The appellees, Mitchell and Clay, seek to avoid PERCO's first refusal option on the ground that Clay was an undisclosed principal and not an assignee. The undisputed testimony indicates that on both occasions Mitchell presented the investment opportunity to Clay only after she had already signed the contracts in question. The testimony also revealed that Clay was not obligated to participate. Under these facts, Clay was clearly not a party to the contract so that she was not an undisclosed principal.

■ The appellees maintain that the first refusal option should not apply in this situation because Mitchell and Clay are good friends so that the transaction was not an arms-length transaction and was not in the ordinary course of business. In support of this position the appellees cite the case of *Isaacson v. First Security Bank of Utah*, 95 Idaho 452, 511 P.2d 269 (1973). In the *Isaacson* case, the court held that the transfer of property from a father to his son for substantially lower than market value constituted more a gift than a sale, thereby not giving rise to a contractual provision of right of first refusal upon sale. The Texas Supreme Court, in the case of *Draper v. Gochman*, 400 S.W.2d 545 (Tex.1966), cited by the appellees, held that a foreclosure sale is not a sale as contemplated in a right of first refusal option. The other case cited by the appellees, *A.P. Simons Company v. Julian*, 531 S.W.2d 451 (Tex.Civ.App.—Eastland 1975, no writ), involved a gift of property rather than a sale. All of the cases cited by the appellees involved either gifts or sales in which the purchase price was far less than market value so that there was no arms-length transaction. In the present case, although the appellees are friends, on each occasion Clay paid Mitchell one-half of what Mitchell had paid for her ⅟₃₂nd interest in return for one-half of the ⅟₃₂nd inter-

est, or a ⅟₆₄th interest. We hold that the sale by Mitchell to Clay of two ⅟₆₄th interests at full value was an arms-length transaction and does not lose that character merely because the seller and the buyer are friends.

■ The appellees further maintain that the first refusal option involved herein is an unlawful restraint on alienation, relying on RESTATEMENT OF PROPERTY, § 413(2) (1944). The Restatement of Property, § 413 has two subsections:

(1) A promissory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision that the owner of the estate shall not sell the same without first offering to a designated person the opportunity to meet, with reasonable expedition, any offer received, is valid, unless it violates the rule against perpetuities.

(2) A promissory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision

(a) that the owner of the estate shall not sell the same without first offering to sell to some designated person, either at a fixed price, or at a percentage of the price offered by another person, or

(b) that the owner of the estate shall pay a certain percentage of the sale price to some designated person,

is valid if, and only if, the restraint is valid under the rules stated in §§ 406–411.

The first refusal provisions in this case refer to the right of PERCO to meet the offer received, not the right to purchase at a fixed price or a percentage of the price offered. It is, therefore, subsection one and not two which is applicable to the case at bar so that the appellees' reliance on subsection two is misplaced.

■ Subsection one provides that an option such as the one at bar is valid so long as it does not violate the rule against perpetuities. The appellees claim that it does violate the rule against perpetuities, but the

Texas Supreme Court has ruled that such a provision does not violate the rule. *Cherokee Water Company v. Forderhause,* 641 S.W.2d 522, 526 (Tex.1982).

■ Mitchell and Clay alternatively maintain that they should be permitted to rescind their agreement. It has been held that after a breach of contract has given rise to a cause of action, the rights of the innocent party are not affected by an offer to perform by the party who has broken the contract. *Sinclair Refining Co. v. Costin,* 116 S.W.2d 894, 898 (Tex.Civ.App.—Eastland 1938, no writ). This rule should also apply to those who seek to undo their breach by rescission. It follows from this ruling that one cannot undo the legal effects of a breach by restoring the status quo as it existed prior to the breach. We hold, therefore, that Mitchell and Clay may not undo the legal consequences of their breach by seeking to restore the status quo as it existed prior to the breach.

■ The appellants and appellees all complain on appeal of the trial court's failure to award reasonable attorney's fees in accordance with TEX.REV.CIV.STAT. ANN. art. 2226 (Vernon Supp. 1982–1983). Article 2226 provides that any person or corporation having a valid claim against another person or corporation founded on oral or written contracts might present the same to the other person or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. Since none of the parties is recovering a claim for damages under the contract, none is entitled to attorney's fees under art. 2226. *Village Medical Center, Ltd. v. Apolzon,* 619 S.W.2d 188, 191 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); art. 2226. Appellant's point of error number two and appellees' point of error number three are overruled.

Judgment of the trial court is reversed, and judgment is rendered that the plaintiffs take nothing by their suit.