The **CAMBRIDGE COMPANY, a general partnership, and Thomas M. Hallin and Carl E. Hallin, individually and as general partners of The Cambridge Company, Petitioners,**

v.

**EAST SLOPE INVESTMENT CORP., a Colorado corporation, Donald Q. Burgett and Dolores E. Burgett, Respondents.**

No. 83SC261.

Supreme Court of Colorado,
En Banc.

May 28, 1985.

Donald K. Bain, Boyd N. Boland, Holme Roberts & Owen, Denver, for petitioners.

John A. Criswell, Englewood, for respondents.

DUBOFSKY, Justice.

In *Cambridge Company v. East Slope Investment Corporation,* 672 P.2d 211 (Colo.App.1983), the Court of Appeals held that a right of preemption contained in a condominium declaration violated the rule against perpetuities.[1] We granted certiorari and now reverse.

The Tenmile Creek Condominiums, located in Summit County, are operated by the Tenmile Creek Condominium Association (Association), a corporation composed of all condominium unit owners. Ownership of the sixty condominium units in the project is subject to the terms, covenants and conditions contained in the condominium declaration recorded in accordance with section 38–33–105, 16A C.R.S. (1982). Paragraph 29(i) of the declaration creates a "right of preemption" in the unit owners, defined as a first right to purchase, upon the same terms and conditions offered by a third

1. The Court of Appeals also held that the preemptive rights in this case violated the rule against unreasonable restraints on alienation. On appeal, the respondents concede that the preemption at issue here does not violate that rule. We therefore do not consider the unreasonable restraint on alienation issue except to the extent that it is intertwined with the rule against perpetuities issue.

party buyer, any other unit offered for sale:

In the event an owner of a unit desires to sell such unit and receives a bona fide offer for such sale, the unit shall be offered to the remaining owners who shall have a first right to purchase such offered unit for the same terms and conditions as the bona fide offer. Notice of such bona fide offer shall be given to the Tenmile Creek Condominium Association, which shall be responsible to notify the remaining unit owners of such offer by mailing notice to the remaining owners. The remaining unit owners shall have five days from the date of such mailing to accept such offer, and if not accepted, the sale may be made to such third party offeree.

All of the terms, covenants and conditions contained in the declaration are "deemed to run with the land" and are binding on all condominium unit owners and "their grantees, successors, heirs, executors, administrators, devisees or assigns."

East Slope Investment Corporation owned unit 211 of the Tenmile Creek Condominiums. On September 6, 1978, East Slope entered into a contract with Dolores and Donald Burgett for the sale of unit 211; when the contract was signed, the Burgetts gave East Slope a $500 deposit. At the time the Burgetts entered into the contract, they were aware of the preemptive right set forth in paragraph 29(i) of the condominium declaration. Under the terms of the contract, the sale was to be closed on or before September 30, 1978.

On September 8, 1978, East Slope notified the Association of the terms of the proposed sale of unit 211. On September 11, 1978, the Association mailed a "notice of first right" to all condominium unit owners setting forth the terms of the proposed sale, and informing them that they could exercise their preemptive right within five days of the date the notice was mailed. Before the prescribed five day period had elapsed, the Cambridge Company, a condominium unit owner and general partnership formed to purchase and rent real estate, hand-delivered letters to the Association exercising its preemptive right and agreeing to be bound by the terms of sale set forth in the notice of first right.[2] Cambridge Company tendered a $500 deposit with the letters.

On September 15, 1978, the Association informed East Slope and the Burgetts that the Cambridge Company had exercised its right of preemption. East Slope nonetheless conveyed unit 211 to the Burgetts, closing the sale on September 27, 1978.

The Cambridge Company instituted an action in the District Court of Summit County against East Slope and the Burgetts (the defendants), requesting that the conveyance of unit 211 to the Burgetts be set aside, that East Slope be ordered to convey the unit to the Cambridge Company, and that the defendants be ordered to pay $50,000 in damages. At trial to the court, the defendants contended that paragraph 29(i) violates the rule against perpetuities. The district court ruled that paragraph 29(i) does not violate the rule and entered a decree of specific performance.[3] The court also denied the Cambridge Company's request for damages because the evidence of damages was too speculative. The Court of Appeals reversed, holding that paragraph 29(i) violates the rule against perpetuities. We disagree.

The rule against perpetuities, incorporated into the Colorado common law, provides that "no interest in real property is valid unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest." *Crossroads Shopping Center v. Montgomery Ward*

---

2. At trial, the defendants disputed whether the plaintiff, the Cambridge Company, had exercised its preemptive right within the prescribed five day period. The evidence showed, and the trial court found, that the company had acted within this limit. The defendants do not dispute that finding on appeal.

3. The district court also determined that the preemptive right here did not constitute an unreasonable restraint on alienation. *See* note 1, *supra*.

*and Co.,* 646 P.2d 330, 332 (Colo.1981). The rule prevents the remote vesting of contingent interests in real property. A right of preemption, like the one in the present case, creates a specifically enforceable right to purchase real property whenever, in the future, the owner desires to sell; such a right traditionally has been viewed as a contingent equitable interest in real property subject to the rule against perpetuities. *Kershner v. Hurlburt,* 277 S.W.2d 619, 623 (Mo.1955); *see* Leach, *Perpetuities in a Nutshell,* 51 Harv.L.Rev. 638, 660 (1938) (hereinafter "Leach"). Therefore, we have held that the rule "applies" to preemptive rights. *Perry v. Brundage,* 200 Colo. 229, 234, 614 P.2d 362, 366 (1980).

A technical application of the rule against perpetuities in this case would void the preemptive right at issue. By the terms of the declaration, the preemptive right may be exercised by the current condominium unit owners or "their grantees, successors, heirs, executors, administrators, devisees or assigns." It is conceivable that a preemptive right could be exercised more than 21 years beyond the period of all lives in being relevant to the condominium declaration. Because any possibility, however remote, that an interest will vest beyond the period of the rule against perpetuities voids that interest under the rule, VI *American Law of Property* § 24.-21 at 63 (1974), the interest created by the right of preemption in this case would be void under a mechanical application of the rule.

■ However, the rule against perpetuities is not merely a technical rule to be mechanically applied. The rule was created by judges to serve important considerations of public policy, and should be applied with those policies in mind. *See generally* Siegel, *John Chipman Gray, Legal Formalism, and the Transformation of Perpetuities Law,* 36 U. Miami L.Rev. 439 (1982). Courts generally have not favored remotely vesting contingent interests because of the likelihood that the interests will restrain alienation; where title is encumbered with remotely vesting contingent interests, buyers will be reluctant to purchase the property, inasmuch as the extent and duration of the title they are taking are uncertain. IV *Restatement of Property,* Introductory Note at 2129–31 (1944); 3 Simes and Smith, *The Law of Future Interests,* § 1117 at 11 (1956); Boyer and Spiegel, *Land Use Control: Preemptions, Perpetuities and Similar Restraints,* 20 U. Miami L.Rev. 148, 157 (1965). Indirect restraints on the alienability of property may lower its market value and deter the present owner from making valuable improvements. *Id.* The rule against perpetuities prevents indirect restraints upon alienation from continuing indefinitely and enhances the alienability and beneficial use of property. *Atchison v. City of Englewood,* 170 Colo. 295, 305, 463 P.2d 297, 301 (1970); *Barry v. Newton,* 130 Colo. 106, 114–15, 273 P.2d 735, 740 (1954); *Weber v. Texas Co.,* 83 F.2d 807, 808 (5th Cir.1936), *cert. denied* 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936); VI *American Law of Property* § 26.2 at 411.

■ Courts have not applied the rule mechanically where its purposes will not be served. For example, an option in a lessee to purchase the leased premises within the term of the lease is exempt from the operation of the rule against perpetuities. *Crossroads Shopping Center,* 646 P.2d at 332; IV *Restatement of Property* § 395, Comment a; Leach at 661. The rationale for the exception is that an option to purchase contained in a lease encourages the lessee to improve the property; invalidation of such an option under the rule against perpetuities would defeat one of the purposes of the rule. *Id.* In addition, courts may refuse to apply the rule against perpetuities where the presence of remotely vesting contingent interests serves public policies that outweigh the policies promoted by the rule. *E.g., Southeastern Pennsylvania Transportation Auth. v. Philadelphia Transportation Co.,* 426 Pa. 377, 233 A.2d 15 (1967), *cert. denied* 390 U.S. 1011, 88 S.Ct. 1259, 20 L.Ed.2d 161 (1968) (option in city to purchase transportation

system promotes public welfare and will not be invalidated under the rule against perpetuities).

■ In the past we have considered the interrelationship between a preemptive right and the policies underlying the rule against perpetuities. In *Atchison*, the plaintiffs, their heirs and assigns possessed a first right to purchase a parcel of land' upon the same terms and conditions as the owner was willing to accept from any third party. Noting first that the purpose of the rule against perpetuities is to keep property freely alienable, this court stated that an option to purchase for a fixed price normally would violate the rule because "with such an option outstanding the owner dare not place substantial improvements on the land, and the likelihood of anyone purchasing it is remote." 170 Colo. at 305, 463 P.2d at 301. However, the court suggested, this reasoning does not apply to a preemption to purchase at an offer price received from a third party, and it is therefore "arguable" that the rule against perpetuities should not void such a preemption. *Id.* at 305, 463 P.2d at 302. The court did not reach a conclusion on this issue because it determined that a different aspect of the preemptive right created a sufficient restraint on the alienation of property to justify application of the rule against perpetuities: the right was

> in no manner connected with any land owned by [the plaintiffs].... [T]here will be no land title interest of record to give any clue as to the identity of future successors in interest to the preemptive right. We feel that at some point in the infinite time at which [the defendant]

might in the future conclude to sell the land, ascertaining and locating the owners of the preemptive right would be an unreasonable task. As a result, there would be a sufficiently unreasonable restraint upon the transferability of the property as to justify imposition of the rule against perpetuities. It may be said that we are stating a rule against alienation and giving it a label of the rule against perpetuities. Be that as it may, the result is the same.

*Id.* at 307–08, 463 P.2d at 303.[4]

■ From *Atchison* we learn that the rule against perpetuities will be applied to preemptive rights only where the purposes of the rule, such as preventing a practical restraint upon alienation or encouraging improvement of the property, are served. *See also Crossroads Shopping Center*, 646 P.2d at 332 (option in lease to acquire more space violates rule against perpetuities because the option will adversely affect alienability and beneficial use of property).[5] In the present case, the preemptive right may be exercised only after the owner of a condominium unit formulates a desire to sell, and it must be exercised upon terms and conditions that the owner already has found acceptable. Therefore, unlike a fixed price option or preemption, the owner is assured of receiving market value for his property and will not be deterred from improving it or offering it for sale; nor will potential buyers, knowing that the market value of the property will remain intact, be deterred from purchasing the property. Moreover, unlike an option giving the holder the power to force a sale, the preemption

---

4. It has been suggested that the court's view of the difficulty of locating the holder of the preemptive right in *Atchison* was incorrect as a matter of fact because preemptive rights may be recorded in the same manner as other property rights. Marsh, *Future Interests—The Rule Against Perpetuities Applied to a Preemption*, 47 Denver L.J. 78, 80–81 (1970). Preemptive rights appearing in contracts, however, are less likely to be recorded than other, more conventional property rights. Moreover, regardless of the factual accuracy of the court's assertion in *Atchison*, the principle that the court established retains its validity: circumstances making it dif-

ficult to locate the holders of contingent future interests may create a sufficient restraint on alienation to require application of the rule against perpetuities.

5. In *Perry v. Brundage*, 200 Colo. 229, 234, 614 P.2d 362, 366 (1980), we held that a preemptive right violated the rule against perpetuities because the right might vest beyond the period of the rule. We did not relate the holding to the rationale underlying the rule against perpetuities. However, we note that, unlike the present case, *Perry* involved a fixed price preemption.

here cannot be exercised unless the owner desires to sell; at that time, the only effect of the preemption is to change the identity of the buyer. In short, both the current and future owners of units subject to the preemptive right hold a title that is freely alienable at the full market price. For these reasons, the vast majority of courts have concluded that preemptions of the type involved here create no practical restraint on alienation. *Weber*, 83 F.2d at 808; *Ritchey v. Villa Nueva Condominium Ass'n*, 81 Cal.App.3d 688, 146 Cal. Rptr. 695 (1978); *Watergate Corp. v. Reagan*, 321 So.2d 133 (Fla.App.1975); *Shiver v. Benton*, 251 Ga. 284, 304 S.E.2d 903 (1983); *Meridian Bowling Lanes v. Meridian Athletic Ass'n*, 105 Idaho 509, 670 P.2d 1294 (1983); *Terrell v. Messenger*, 428 So.2d 1241 (La.App.1983); *Smith v. Mitchell*, 301 N.C. 58, 269 S.E.2d 608 (1980); *Metropolitan Transportation Auth. v. Bruken Realty Corp.*, 125 Misc.2d 497, 479 N.Y.S.2d 646 (1984); *Perritt Co. v. Mitchell*, 663 S.W.2d 696 (Texas Ct.App.1983); *Robroy Land Co. v. Prather*, 95 Wash.2d 66, 622 P.2d 367 (1980); *Hartnett v. Jones*, 629 P.2d 1357 (Wyo.1981). The *Restatement of Property* § 413, comment c (1944) has summarized the reasoning behind these court opinions:

The interference with alienation present in a requirement that a designated person be afforded a reasonable opportunity to meet any offer received from a third person by an owner desirous of selling is so slight that the major policies furthered by freedom of alienation are not infringed to a degree which requires invalidation. Under these circumstances, the owner has two potential buyers at the same price and is assured of a reasonably prompt culmination of the sale.

■ Moreover, the restraint on alienation identified in *Atchison*—the potential difficulty of locating the holder of the preemptive right—is not present here. Tenmile Creek Condominium's declaration requires all condominium unit owners to register their mailing addresses with the Tenmile Creek Condominium Association. The holders of the preemptive right in this case easily may be located and notified of their opportunity to exercise the preemptive right.[6]

■ Because the preemptive right in this case poses no threat to the free alienability of the condominium units, we perceive no reason to invalidate the right under the rule against perpetuities. In so holding, we join a number of other jurisdictions that have reached the same conclusion. *Weber*, 83 F.2d at 808; *Shiver*, 304 S.E.2d at 906; *Metropolitan Transportation Auth.*, 479 N.Y.S.2d at 653; *Forderhouse v. Cherokee Water Co.*, 623 S.W.2d 435 (Tex.Civ.App. 1981), *aff'd in pertinent part*, 641 S.W.2d 522 (Tex.1982); *Robroy Land Co.*, 622 P.2d at 370.[7] Commentators also have ex-

---

6. We have held that the validity of a restraint on alienation "depends upon its reasonableness in view of the justifiable interests of the parties." *Malouff v. Midland Federal Savings and Loan Ass'n*, 181 Colo. 294, 300, 509 P.2d 1240, 1243 (1973). In determining whether a restraint is reasonable, a court must look at the totality of circumstances, "taking into account the respective interests of the parties and the duration and nature of the restraint used to enforce those interests." *Perry*, 200 Colo. at 235, 614 P.2d at 367. However, because we determine that the preemptive right in this case does not restrain alienation, we need not address the question of reasonableness. The parties did not raise at trial the possibility that more than one owner could attempt to exercise a preemptive right with respect to an offer for the same unit. Therefore, we do not consider whether that situation might restrain alienation.

7. In two of these cases, the courts, after holding that the preemptive right at issue did not violate the rule against perpetuities because it did not impede alienability, went on to supply a reasonable time limit for the exercise of the preemptive right. *Shiver v. Benton*, 251 Ga. 284, 304 S.E.2d 903, 907 (1983) (court supplied reasonable time because agreement expressed intent to avoid a violation of the rule against perpetuities); *Robroy Land Co. v. Prather*, 95 Wash.2d 66, 622 P.2d 367, 371 (1980) (a commercial agreement is presumed to inherently possess a reasonable limit on duration). In the present case, unlike *Shiver*, the language of the covenant does not indicate any intent to limit exercise of the preemptive right to a reasonable time period. Since we have concluded that the right of preemption here does not pose a threat to the alienability or improvement of the condominium units, we do not see any public policy

pressed support for this position. *E.g.*, VI *American Law of Property* §§ 26.66 and 26.67; Note, *Condominiums and the Right of First Refusal*, 48 St. John's L.Rev. 1146 (1974); Browder, *Restraints on the Alienation of Condominium Units*, 1970 U.Ill.L.F. 231.[8]

■ However, the defendants suggest that the General Assembly has implied that all preemptive rights in the condominium context remain subject to the rule against perpetuities. As first introduced in the Senate, the original version of section 38–33–105(1) stated:

> It is expressly provided that the rule of property known as the rule against perpetuities and the rule of property known as the rule restricting unreasonable restraints on alienation ... shall not be applied to defeat any of the provisions of any declaration, bylaw, or other document creating or establishing a project containing condominium units relating to (1) the restrictions upon partition, and (2) the methods by which the condominium units are disposed of or the methods by which the character of ownership is changed in the event of destruction or obsolescence.

The Senate Judiciary Committee struck the language relating to "the methods by which the condominium units are disposed of." *See* Senate Journal, Mar. 13, 1963 at

464–67. The General Assembly adopted the statute in its revised form. Ch. 223, sec. 1, § 118–13–5, 1963 Colo.Sess. Laws 782, 784. The Court of Appeals held that elimination of this language evinces a legislative intent to void all contingent interests created by a condominium declaration, including rights of preemption, that may vest beyond the period of the rule against perpetuities.

We discern no such legislative intent. The entire clause following the numeral (2) in the original version of section 38–33–105(1) relates to disposal or change of ownership "in the event of destruction or obsolescence." The stricken language is not related to rights of preemption that may be exercised in situations not involving the destruction or obsolescence of the units, and its removal does not indicate a legislative view concerning the operation of the rule against perpetuities upon preemptive rights of the type presented here.[9]

The judgment of the Court of Appeals is reversed.

---

considerations requiring us to supply a reasonable time limit.

**8.** A number of other jurisdictions, including some that have found preemptive rights at the offeror's price not to constitute a restraint on alienation, have held that preemptive rights of the type presented here violate the rule against perpetuities. *E.g., Neustadt v. Pearce*, 145 Conn. 403, 143 A.2d 437 (1958); *Watergate Corp. v. Reagan*, 321 So.2d 133 (Fla.App.1975); *Martin v. Prairie Rod and Gun Club*, 39 Ill.App.3d 33, 348 N.E.2d 306 (1976); *Davis v. McDowell*, 549 S.W.2d 619 (Mo.App.1977); *Melcher v. Camp*, 435 P.2d 107 (Okla.1967); *see also Smith v. Mitchell,* 301 N.C. 58, 29 S.E.2d 608 (1980) (preemption at offeror's price is "reasonable" where it vests within the period of the rule against perpetuities). As the text of this opinion indicates, we believe that the rationale of the rule against perpetuities does not support this view.

**9.** The Court of Appeals quoted the original version of section 38–33–105(1) as exempting from the rule against perpetuities provisions relating to partition, "(2) the methods by which the condominium units are disposed of, *or (3)* the methods by which the character of ownership thereof is changed in the event of destruction or obsolescence." *Cambridge Co. v. East Slope Investment Corp.*, 672 P.2d 211, 214 (Colo.App. 1983) (emphasis added). In this quotation the language relating to disposal of units is contained in a separate clause and could be read as referring to any provision for the disposal of units, including sale. However, our review of the printed bill as originally introduced in the Senate shows that the printed bill does not contain the numeral 3 and that the language relative to disposal and change of ownership appears in a single clause. Therefore, we read the significance of the amendments to this bill quite differently than did the Court of Appeals.