751 P.2d 1008 (1987)
In the Matter of the Trusts Created by John A. FERGUSON and by John A. and Karrie J. Ferguson, Settlors.
The FIRST INTERSTATE BANK OF DENVER, Petitioner-Appellant and Cross-Appellee,
v.
NAGEL INVESTMENT COMPANY, a Colorado corporation, Respondent-Appellee and Cross-Appellant.
No. 85CA0854.
Colorado Court of Appeals, Div. II.
August 27, 1987.
On Petition for Rehearing, Opinion Modified and, as Modified, Reissued October 15, 1987.
*1009 Conover, McClearn & Heppenstall, P.C., Michael S. McCarthy, Anne W. Kleinkopf, Jo Frances Walsh, Denver, for petitioner-appellant and cross-appellee.
Holland and Hart, Ralph F. Crandell, Brian K. Fahselt, Denver, for respondent-appellee and cross-appellant.
SMITH, Judge.
In this action for a declaratory judgment, petitioner, First Interstate Bank of Denver (Bank), appeals the probate court's judgment entered in favor of respondent, Nagel Investment Company (Nagel), on issues concerning interpretation of building provisions in a lease. Nagel cross-appeals the judgment of the court entered in favor of the Bank on the issue of whether an option to buy the land that was leased to the Bank violates the rule against perpetuities. We reverse in part and affirm in part.
This action was commenced in the probate court by the Bank as trustee for trusts created by John A. Ferguson and John A. and Karrie J. Ferguson, for the purpose of obtaining a declaratory judgment clarifying their rights under a long-term lease. The lease was entered into in 1904 by the parties' predecessors in interest, and expires July 1, 2001. It covers six contiguous lots, numbered 17 through 22, located at the corner of Seventeenth and Champa Streets in Denver.
The trial court found that at the time the lease was entered into, there was a two-story office building on lots 17 and 18, and a private residence and barn on lots 20 and 21. Sometime in 1905 or 1906, the original lessee removed all or a major part of the two-story office building located on lots 17 and 18 and erected a three-story office building on lots 17, 18, and 19. In 1910, they removed the private residence and barn and erected a five-story office building on lots 20, 21, and 22. In 1913, two more stories were added to this building. A subsequent lessee removed all or a major part of the three-story office building located on lots 17, 18, and 19, and erected a seven-story office building in its place. This building was then joined to the adjacent seven-story building on lots 20, 21, and 22 to form the single building which remains at the present time.
The court then held that removal of the building which now stands on the property is prohibited by the terms of the lease, that in order to purchase the property pursuant to an option contained in the lease, the lessee had to pay the lessor one-half the value of any improvements the lessee places on the property, and further, that the option to purchase the premises contained in the lease does not violate the rule against perpetuities.
The Bank first argues that under the terms of the lease it may remove the building that is presently on the property *1010 and replace it with a new building of equal or greater value. We agree.
The lease provides that the lessee:
"[M]ay remove or cause to be removed, at its own expense, the buildings or improvements now situate upon said leased premises, and as soon as said buildings or improvements are removed therefrom, to erect and complete at its own expense, a good and substantial building or buildings thereon, and further, that the said building and improvements erected upon the said premises shall at once become a part of the realty ... without any right on the part of any one whomsoever, to remove the same or any part thereof, except for the purpose of remodeling, rebuilding or improving the same. ..." (emphasis added)
The trial court held that this language permitted the buildings existing on the leased premises in 1904 to be totally replaced only once and that, thereafter, they could not be removed but only remodeled, rebuilt, or improved.
However, the interpretation of unambiguous language contained in a lease is a question of law, and therefore, a reviewing court is not bound by the interpretation given the lease by the trial court. Pepcol Manufacturing Co. v. Denver Union Corp., 687 P.2d 1310 (Colo.1984). Here, we think the probate court's interpretation of this provision is too narrow and ignores the language, emphasized above, which grants certain exceptions to the prohibition against further removal of the buildings.
The clause in question first allows the lessee to remove the buildings that were present at the time the lease was entered into and to erect other buildings on the property. It then denies anyone the right to remove those buildings or any part of them, except for the purpose of "remodeling, rebuilding or improving the same". (emphasis added) We think this demonstrates an intention by the lessor that once the lessee replaced the original buildings present in 1904, it could not then remove the buildings so as to leave the property vacant. Rather, if the lessee removes the buildings, it can only be to rebuild in their place.
Nagel, an owner of a one-half interest in the property, argues that the lessee must first obtain its consent prior to rebuilding on the property. However, there is nothing in the lease to support this contention.
The Bank next argues that the trial court erred in holding that in order to exercise its option to purchase the property that is the subject of the lease, it must first pay the lessor one-half of the value of all improvements on the leased premises, including those built by the lessee at its own expense. We perceive no error in the trial court ruling.
If language used in an agreement is plain, its meaning clear, and no absurdity is involved, the agreement must be enforced as written. Bennett v. Price, 692 P.2d 1138 (Colo.App.1984). Again we note that, because interpretation of this lease is a question of law, we are not bound by the trial court's determination. Pepcol Manufacturing Co. v. Denver Union Corp., supra.
The provision of the lease in question provides:
"[T]hat the said party of the second part (lessee), its successors and assigns, shall have the option and privilege of purchasing said leased premises at the expiration of said term of ninety-seven (97) years, upon payment to said parties of the first part (lessor), their heirs, assigns or legal representatives, one-half of the then value of said improvements ascertained as above provided and the market value of said leased premises, exclusive of such improvements as may be placed thereon by said second party, its successors or assigns...."
The trial court held that in order to exercise this option, the lessee must pay one-half of the value of the improvements plus the market value of the underlying land (exclusive of the improvements placed thereon by the lessee). We hold that this implementation is consistent with the plain and clear language contained in the lease. Therefore, should the lessee decide to exercise the option, it must pay one-half of the *1011 value of those improvements AS SUCH VALUE IS DEFINED UNDER THE TERMS OF THE LEASE that it has placed on the property at its own expense in addition to the market value of the land, exclusive of any building value.
On cross-appeal, Nagel argues that the trial court erred in holding that the lessee's option to purchase the leased property at the expiration of the lease does not violate the rule against perpetuities. We disagree.
The rule against perpetuities provides that: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Perry v. Brundage, 200 Colo. 229, 614 P.2d 362 (1980). Although it is true that an option to purchase real estate is subject to this rule, the rule does not apply if the option is contained in a lease and is exercisable during the term of the lease. Kimmick v. Santilli, 42 Colo.App. 341, 596 P.2d 1223 (1979); see also Cambridge Co. v. East Slope Investment Corp., 700 P.2d 537 (Colo.1985).
Here, the lease agreement provides that the lessee shall have the option to purchase the property that is the subject of the lease "at the expiration of said term of ninety-seven (97) years." We agree with the probate court that the expiration of the lease, or the point at which the lease ends, is part of the term of the lease. If the option were not exercisable until after the lease expired, it would violate the rule against perpetuities. However, in our view, this provision contemplates that the lessee may exercise the option in such a way that at the same time the lease expires, it becomes the new owner. Therefore, the option is exercisable during the term of the lease. See Oliner v. City of Englewood, 42 Colo. App. 106, 593 P.2d 977 (1979).
Nagel's request for attorney fees is without merit and is therefore denied.
Accordingly, that part of the judgment of the trial court holding that the Bank cannot remove the existing building from the leased property for the purpose of rebuilding is reversed. That part of the judgment finding that the lessee's option to purchase the property does not violate the rule against perpetuities and that it must pay the lessor one-half of the VALUE AS SUCH VALUE IS DEFINED UNDER THE TERMS OF THE LEASE of improvements added to the premises in order to exercise its option to purchase the property are affirmed.
TURSI and BABCOCK, JJ., concur.