39619. SHIVER et al. v. BENTON et al.

CLARKE, Justice.

We granted an application to appeal an interlocutory order denying summary judgment to the defendants-appellants in an action involving the enforcement of a right of first refusal agreement entered into by tenants in common who own in fee a large tract of marble land in Pickens County. The land is now under lease to appellant, Georgia Marble Company, and has been leased for approximately 100 years. The present lease will expire in 1984. This dispute arose when Shiver, one of the cotenants executed a contract to sell her three-sixteenth interest in the property to Georgia Marble. The appellees, Benton and Davis, as trustees for another cotenant's interest filed suit to enjoin the sale, alleging the first refusal agreement had not been complied with and alleging interference with contractual rights. The appeal involves issues of whether the first refusal agreement is void as violative of the rule against perpetuities or as restraint on alienation and whether the appellants were entitled to partial summary judgment on the issue of tortious interference with contract.

1. In 1970 the twelve owners of fractional shares of the land entered into a Right of First Refusal Agreement (hereinafter the Agreement). The Agreement provides in part as follows:

"No party hereto shall sell or otherwise dispose of, or agree to sell or otherwise dispose of, his or her interest in said Exhibit A property or any part thereof or any interest therein unless said party shall have first received a written bona fide offer which, if accepted, would constitute a legally binding contract of sale (which offer pertains solely to said party's entire undivided interest in said Exhibit A

property) for the purchase of said party's interest and shall have notified each of the other parties hereto in writing of the names of the party or parties making said offer and the price, terms and conditions thereof; and the party desiring to sell or dispose of his or her interest agrees that the other parties hereto shall thereupon have, and are hereby granted, the prior right to purchase all (but not part) of said interest at the same price and upon the same terms and conditions as are contained in said offer."

It also provides:

"The agreements, restrictions and covenants contained herein shall bind the heirs, executors, legal representatives and (if an interest is transferred in accordance with the terms of this Agreement) assigns of each party hereto, to the maximum extent and time permitted by law. It is the intent of the parties that this Agreement not violate the rule against perpetuities and that the same be construed so as to give effect to this intent."

The Agreement also provides that any sale not in accordance with its terms shall be null and void.

The issue before us is whether the contract entered into by tenants in common giving each the first refusal right to purchase the interest of a cotenant who desires to sell is an impermissible restraint on alienation or because of its unlimited duration violates the restrictions and policies of the rule against perpetuities.

A right of first refusal may have many similarities to an option but is more adequately defined by the term preemptive right. American Law of Property, Vol. VI, § 26.66 (1952). An option right gives to the holder the power to compel a sale by an unwilling owner. A preemptive right merely sets a requirement that when the owner decides to sell the person holding the preemptive right must be offered the opportunity to buy.

Preemptive rights take different forms; some require that the property be offered to the holder of the right at a definite price or at a price which is below market value. In reaching the question of whether such a right is an unlawful restraint on alienation the method of setting the price is critical. See 40 ALR3d 920, § 4. The Restatement rule is that a preemptive right is not an unlawful restraint on alienation when the right of first refusal is conditioned on meeting the terms of a third-party offer. Restatement of Property § 413 (1944). "If the holder of the pre-emption right is merely entitled to meet the offer of an open market purchaser, there is little clog on alienability. But if he has a right to purchase at a fixed price, or at a reduced price from that offered in the market, it is likely to involve a sacrifice by the owner in order to alienate the property. Hence, it becomes a far more serious interference with alienability." Simes &

Smith, The Law of Future Interests, § 1154, pp. 62, 63 (2d Ed. 1956). We hold that the right of first refusal in this case is not invalid as a direct restraint on alienation.

The next question is whether the preemptive right in the Agreement is void as violative of the rule against perpetuities. The rule is codified in OCGA § 44-6-1 (Code Ann. § 85-707). The rule places time limits on the vesting of future interests; it also seeks to protect the free alienability of property, although the restraint may be more indirect than a pure restraint on alienation which is against public policy even if confined in time. In *Cook v. Horn,* 214 Ga. 289, 293 (104 SE2d 461) (1958), this court stated a purpose of the rule "is to prevent the tying up of property for an unreasonable length of time and to prohibit unreasonable restraint upon the alienation of property." Although the rule is stated solely in length of time there are numerous underlying purposes. These include "the utilization of wealth, the development of land by its current beneficial owners, and the assurance that society will be controlled by the living rather than from the grave." *St. Regis Paper Co. v. Brown,* 247 Ga. 361, 362 (276 SE2d 24) (1981).

As stated in *St. Regis,* in the modern setting it is useful to look at the effect of the transaction as it relates to the policies of the rule. The position of the Restatement is that preemptive rights fall within the rule against perpetuities. 4 Restatement of Property, supra. This is also the position of the majority of the jurisdictions in this country. See 40 ALR3d 920.

However, we are not persuaded that the rule against perpetuities should be applied to render void the Agreement at issue here when the effect of the agreement and the policies of the rule are examined together.

The owners of the land here certainly have an interest in developing and using the land to its fullest. Since the first refusal right is not tied to a fixed price method or some method of pricing which may not reflect true market value, but is conditioned upon meeting a sale price which the seller is willing to accept, the Agreement encourages the development of the property to its fullest potential.

It has been suggested that the ruling in *St. Regis,* supra, should be extended to exempt all options from the rule against perpetuities. Chaffin, The Rule Against Perpetuities as applied to Georgia Wills and Trusts: A Survey and Suggestions for Reform. 16 Ga.L.Rev. 235, 311 (1982). The preemptive right given here is similar to some options in its effect. "As a practical impediment to alienation, the ordinary option is far more objectionable than many pre-emptions." American Law of Property, Vol. VI, p. 509, § 26.66.

In speaking of the type of preemptive right now before us, other commentators have suggested that the rule not apply. "It might even be urged that this type of provision should be valid even if unlimited in duration, since it does not impede alienability at all." Simes & Smith, supra, § 1155, p. 64. "Even though the pre-emption is unlimited in duration, it should be valid if it requires merely an offer at the offeror's own price. While the rule against perpetuities may technically be applicable in this situation, it ought not to be applied, since the future interest of the pre-emptioner constitutes no impediment to transfer of the property." American Law of Property, p. 511, § 26.67.

In the recent case of Robroy Land Co. v. Prather, 95 Wash.2d 66 (622 P2d 367) (1980), the court rejected the application of the rule to a contract granting a right of first refusal to the grantee, his heirs and assigns. The court held that a preemptive right where the pricing method is based upon matching the offer of a third party does not come within the policies of the rule against perpetuities, even if unlimited in duration. That court adopted a rule that such contracts would be governed by general contract law of a "reasonable time" under the circumstances. The Wyoming court in Hartnett v. Jones, 629 P2d 1357 (Wyo. 1981), discusses the different rationales used by courts to exempt preemptive rights from the rule against perpetuities and rejects application of the rule to a preemptive right between joint venturers holding real property. It was decided that the time limit should be supplied by the general laws regulating joint ventures in that state.

The appellants contend that the proposition that the Agreement violates the rule against perpetuities is controlled by *Lufburrow v. Williams,* 152 Ga. App. 674 (263 SE2d 535) (1974). *Lufburrow* involved deeds which contained a clause prohibiting the grantee from selling without first offering the property to all living descendants of Stephen Lufburrow at its ad valorem tax value. We find substantial differences. In that case a deed gave the right to persons who had no present interest in the property and the price was not tied to the open market but to the tax digest. Such an arrangement would restrict alienability as well as inhibit the owner from developing.

In contrast, we hold that the Agreement at issue here is compatible with the policies of commerce and utilization of land. We hold that it is not void as a violation of the rule against perpetuities or as a restraint on alienation.

In so holding, we are also convinced that some time limit for the enforcement of these rights is desirable. This case can be resolved by the rule of enforcement within a reasonable time. The Agreement

entered into by Mrs. Shiver and the others expresses an intent that no specified time limit be set but that the rights would expire within the duration allowed by the rule against perpetuities. The Agreement was entered into in 1970. We hold that the attempt by the preemptioners to enforce their rights under the Agreement in 1981 is within a reasonable time under the circumstances.

2. Appellants contend the trial court erred in denying their motion for summary judgment on the ground that the appellees failed to match the terms and conditions of Georgia Marble's offer to buy. In exercising the right of first refusal the preemptioners are given the right to purchase "at the same price and upon the same terms and conditions" as are contained in the third-party offer. This means that the parties to the contract agree that the terms and conditions of their possible purchase will be set by the third party. *Radio Webs, Inc. v. Tele-Media Corp.,* 249 Ga. 598 (292 SE2d 712) (1982). We agree with appellants that the intent of the 1970 agreement is clear and unambiguous. However, we hold the trial court properly denied their motion for summary judgment.

The price offered by the preemptioners here was the same as Georgia Marble ($600,000). The down payment, schedule of payments and interest terms are also identical. The Georgia Marble contract provides that the promissory note be "guaranteed by Jim Walter Corporation or another party acceptable to the Tate heir [appellant Shiver]." Georgia Marble is a wholly owned subsidiary of Jim Walter Corporation. The trustees' offer provides that the note "will be guaranteed by a person acceptable to you, or will be secured by collateral acceptable to you, or will be secured by a Guaranty or Guarantees or collateral determined by the appropriate Judge of the Superior Court to provide the same degree of security as the Guaranty set forth in the offer of Georgia Marble Company."

Appellants contend that since the guarantor is not identical with the Georgia Marble offer that they are entitled to summary judgment as a matter of law. Appellees contend that an offer by them of Jim Walter Corporation which owns Georgia Marble was clearly impossible, and that since the Georgia Marble offer is stated in the disjunctive their offer of a guarantor acceptable to Shiver is sufficient to comply with the Agreement's requirement of "the same terms and conditions."

In determining if there has been compliance with the first refusal agreement it is necessary to look to the intent of the parties when the first refusal agreement was entered into. *Radio-Webs,* supra. The issue here is whether the trustees have properly performed under that agreement. It cannot be said that they have failed to perform as a matter of law under the circumstances of this

case and summary judgment on that point was properly denied.

3. The trustees' complaint alleges a wrongful interference with their contract rights. The appellants moved for partial summary judgment on this issue and enumerate as error the trial court's denial of their motion. The trial court's order, in construing the evidence against the movant as must be done in summary judgment, found there were issues of fact as to whether Georgia Marble materially and substantially interfered with the rights of the trustees under the 1970 agreement. It appearing from the record that certain facts are in dispute the motion was properly denied.

4. The trial court, after a hearing initially entered a temporary restraining order on July 8, 1981, to restrain the conveyance of the interest of Shiver in the realty to Georgia Marble or Jim Walter Corp. Upon learning that a closing conveying the property had taken place in an automobile, this order was amended to restrain the recording of the deed from Shiver to Georgia Marble or Jim Walter and to enjoin final transfer of title.

By order of January 4, 1982, the temporary orders were continued in an interlocutory order. On January 14, 1982, the interlocutory order and the temporary orders were amended nunc pro tunc to add the legal description of the property Shiver was conveying to Georgia Marble.

Appellants contend the orders were void as to form under OCGA § 9-11-65 (d) (Code Ann. § 81A-165) and were improperly corrected on January 14, 1982. OCGA § 9-11-65 (d) (Code Ann. § 81A-165) provides in part "Every order granting an injunction and every restraining order shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." It is alleged that the orders referring to the realty of Shiver being conveyed to Georgia Marble do not describe the act sought to be restrained "in reasonable detail."

Appellants rely on *Thomas v. Fairburn Bkg. Co.,* 244 Ga. 741 (262 SE2d 58) (1979), which held an injunction of no effect enjoining the parties " 'from disposing of any of their respective assets as set forth in the temporary restraining order.' " The temporary restraining order did not itself list any assets.

While not containing a definite legal description of the Shiver property sought to be conveyed to Georgia Marble, the orders were more specific and descriptive in the act restrained than those in *Thomas,* supra. Furthermore, we hold that amendments entered on January 14, 1984, supplying a more definitive description were proper and no harm to the appellants has been shown.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 7, 1983 —
REHEARING DENIED JULY 21, 1983.

*Corish, Beckmann, Smith & Pinson, Luhr G. C. Beckmann, Jr., Edward M. Hughes, Hansell, Post, Brandon & Dorsey, Gary W. Hatch, Jule W. Felton, Jr., David J. Bailey, Berry & McCallar, C. James McCallar, Jr., for appellants.*
*John B. Miller, J. Littleton Glover, Jr., for appellees.*