A05A0789. ATLANTA MULTISPECIALTY SURGICAL
ASSOCIATES, LLC v. DeKALB MEDICAL CENTER, INC. et al.
(615 SE2d 166)

MILLER, Judge.

Atlanta Multispecialty Surgical Associates, LLC (AMSA) sued DeKalb Medical Center, Inc. (the Medical Center) for breach of contract, tortious interference, and defamation when the Medical Center began to use surgical assistants hired through companies other than AMSA. The trial court granted summary judgment to the Medical Center on all claims, and AMSA now appeals. We find no error and affirm.

On appeal from a grant or denial of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether the trial court erred in concluding that no genuine issue of fact remains and that the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

So viewed, the evidence shows that on April 16, 2001, the Medical Center and AMSA entered into a contract under which AMSA would provide the Medical Center with surgical assistants. The contract included the following provision:

> *Nonexclusivity.* The Services to be provided by [AMSA], through the Surgical Assistants, hereunder are nonexclusive. If [AMSA] at any time or for any reason fails to provide services in accordance with the request of physicians on the Medical Staff of the Hospital, physicians shall have the option to make arrangements for the provision of any or all surgical assistant services through other qualified professionals.

The contract also contained a merger clause stating that it "supersedes any and all prior discussions and agreements" between the parties and their agents, and was terminable at will by either party with 90 days written notice. On the same day, the Medical Center entered into similar agreements with two other surgical assistant providers, and entered into three other such agreements that spring and summer.

In early 2002, several Medical Center physicians brought complaints of overcharging by AMSA to the attention of the Medical Center's director of surgical services. The director prepared a flyer summarizing the complaints. The flyer described the overcharges, but spoke only of a "First Assistant Agency" as the entity responsible for them. The director then distributed the flyer to members of the department of surgery at a regularly scheduled meeting, and to the

Medical Center administration with a cover memorandum. The president of AMSA then sent a letter to Medical Center physicians and staff in which he identified AMSA as the unnamed "Agency," noted that "[t]here is no doubt that these errors are entirely our own," and apologized for "any problems this may have caused you with your patients." He sent a similar letter the following day, noting that "we have had some serious problems with our billing systems recently which have led to some unusually high bills and several justifiable complaints from your patients," and apologizing once again. By June 2003, the number of Medical Center cases employing AMSA assistants had decreased by over 90 percent.

In April 2003, AMSA filed suit against the Medical Center for breach of contract, tortious interference, and defamation. The Medical Center moved for summary judgment, which was granted. AMSA now appeals, asserting that material issues of fact exist as to all its claims.

1. Where the terms of a contract are unambiguous, the court must enforce it literally, even if one party contends that he understood the contract to mean something else. *Anderson v. Astro Exterminating Svcs.*, 259 Ga. App. 370, 371 (577 SE2d 67) (2003). There is nothing ambiguous about this contract's nonexclusivity clause, labeled as such, which gave Medical Center physicians "the option to make arrangements for the provision of any or all surgical assistant services through other qualified professionals." The president of AMSA himself admitted that the contract did not prohibit the Medical Center from entering into agreements with other surgical assistant providers. Thus no issue of material fact remains as to whether the Medical Center breached its contract when it made other arrangements to obtain surgical assistants. See id. (affirming grant of summary judgment where no issue of material fact remains as to allegedly ambiguous contract term).

2. A plaintiff asserting tortious interference with a contractual relationship must show that the defendant "(1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with (the plaintiff); and (4) caused (the plaintiff) financial injury." (Punctuation and footnote omitted.) *Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (1) (596 SE2d 785) (2004). Here, AMSA fails to prove even the first of these elements. AMSA argues that the Medical Center's director of surgical services, who wrote the memorandum and flyer that apparently led to the falling-off of AMSA's business there, was a "stranger" to the contract. It is undisputed, however, that this director was responsible for the administration of the surgical assistant program. Whether or not she signed the contract, then, she cannot be held a stranger to it, and

AMSA's tortious interference claim must therefore fail. See id. at 333 (1); *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 610 (2) (503 SE2d 278) (1998) (affirming grant of summary judgment on tortious interference claim against person involved in "business relationship giving rise to and underpinning the contract").

3. In order to recover for libel or slander, a plaintiff must show that the offending statement was "published," or communicated to another person. *Nelson v. Glynn-Brunswick Hosp. Auth.*, 257 Ga. App. 571, 573 (1) (571 SE2d 557) (2002). However, when the communication is intracorporate, and is received in the course of a duty or by virtue of an authority, there is no publication. Id. at 573-574 (1). Here, the Medical Center's administrators and surgical staff, both of whom shared responsibilities as to the surgical assistant program with its director, received the memorandum and flyer from her. Since there was no distribution of these materials beyond this select group, there was no publication, and thus no defamation. Id. at 574-576 (1) (summary judgment properly granted to hospital, since circulation of letter did not amount to publication and information was privileged); see also OCGA § 51-5-7 (2) (statements made "in good faith in the performance of a legal or moral private duty" are privileged).

The trial court did not err when it granted summary judgment to the Medical Center.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 20, 2005.

*Deming, Parker, Hoffman, Green & Campbell, Beverly R. Adams*, for appellant.

*Powell Goldstein, Eric P. Schroeder*, for appellees.