A05A1854. THE HAMMER CORPORATION v. WADE et al.

(628 SE2d 638)

RUFFIN, Chief Judge.

The Hammer Corporation ("Hammer") sued Betty Wade, Scott Wade, Contract Packaging Resources, Inc., Village Consumer Products, LLC, and Biotek Pharmaceuticals, Inc. (collectively, "the defendants"), seeking damages for breach of contract. Hammer also sought to hold the Wades personally liable for tortious interference with contract. Following cross-motions for summary judgment, the trial court ruled that Hammer's remedy for breach of the agreement was limited by the terms of the contract and thus it could not recover the damages it sought. Accordingly, the trial court granted the defendants' motion for summary judgment as to breach of contract. The trial court also rejected Hammer's claim against the Wades, finding that it lacked personal jurisdiction over the individual defendants and that a tortious interference claim would not lie because the Wades were not strangers to the contract. Hammer appeals these rulings. Finding no error, we affirm.

A trial court properly grants summary judgment when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[1] "We review a trial court's summary judgment ruling de novo, construing the facts and all reasonable inferences in favor of the nonmoving party."[2]

So viewed, the record shows that Hammer, which is solely owned by Armand Kramedjian, distributed "list one" ephedrine products. Initially, Contract Packaging made the packaging for the products. However, the Wades, who were the officers and directors of Contract Packaging, decided to purchase a portion of the Hammer Corporation's ephedrine distribution market, and the Wades formed Village Consumer Products for this purpose.

---

[1] See *Wallis v. B & A Constr. Co.*, 273 Ga. App. 68 (614 SE2d 193) (2005).

[2] Id.

On December 31, 1999, the parties entered an Assignment and Bill of Sale and Security Agreement in which Hammer sold, transferred, and assigned to Contract Packaging (1) "all of Hammer's rights and interest in . . . 'Efedrin' and 'Maximum Strength Ephedrine' products"; (2) "all of Hammer's then existing inventory"; (3) Hammer's distribution, customer, shipping, billing, and receivable information; and (4) all of Hammer's marketing information. Under the terms of the agreement, Village Consumer Products executed three promissory notes to Hammer: two for $1.2 million and one for over $5 million.[3] All three notes were guaranteed by Contract Packaging.

In October 2000, after the Wades encountered certain regulatory problems, the parties renegotiated the terms of the agreement, which reduced the purchase price. The parties signed an "Amended and Restated Promissory Note," which changed the payment structure such that monthly payments were calculated based upon the amount of all products sold. With respect to a default under the note, the amended agreement provided:

> The occurrence of any Event of Default shall entitle Holder, at its option and as its sole remedy hereunder, to exercise its remedies as a secured party under Article 9 of the Uniform Commercial Code as in effect in the State of Georgia to foreclose Holder's security interest in the collateral described in the Assignment and Bill of Sale in full satisfaction of this Note. The Non-Competition Agreements executed in connection with the Assignment and Bill of Sale shall also terminate. If enforcement of this Note is by or through an attorney at law, then Maker shall be obligated to pay all costs of collection and enforcement including reasonable attorneys' fees actually incurred.
>
> *IN THE EVENT OF AN EVENT OF DEFAULT, UNDER NO CIRCUMSTANCES SHALL MAKER BE LIABLE FOR, NOR SHALL HOLDER BE ENTITLED TO ANY DEFICIENCY SHOULD THE AMOUNT OF THE COLLATERAL BE INSUFFICIENT TO DISCHARGE THE REMAINING BALANCE OWED HEREUNDER.*

---

[3] The original sales price also included a $500,000 payment to Hammer for signing a noncompete agreement and forgiveness of $84,000 that Hammer owed Contract Packaging.

After signing the amended note, Hammer learned that the Wades had formed yet another company, Biotek Pharmaceuticals, Inc., which also distributed ephedrine products in addition to other over-the-counter pharmaceuticals. Although Scott Wade maintained that the Biotek ephedrine products were not initially targeted toward customers of Hammer's line, Kramedjian believed that the Biotek sales were undercutting payments due Hammer under the note.

Hammer filed suit against Contract Packaging and Village Consumer Products, seeking, inter alia, inspection of "all records within [Contract Packaging's] possession, or within the possession of any [Contract Packaging] controlled entity participating in the List I Ephedrine business." Hammer also sought damages and attorney fees. Over a year later, Hammer amended its complaint to add Biotek, Scott Wade, and Betty Wade as defendants. The amended complaint sought to pierce the corporate veil and included a claim against the Wades in their personal capacities, alleging that by forming Biotek, they tortiously interfered with the contract between Hammer and Contract Packaging.

The defendants moved for summary judgment, arguing that under the express terms of the contract, Contract Packaging was only required to pay royalties on those products purchased from Hammer, which did not include the ephedrine products sold by Biotek. In the alternative, the defendants asserted that Hammer's claim for damages failed because "under the clear and unambiguous terms of the agreement, plaintiff's 'sole remedy' is limited to a foreclosure proceeding." The Wades and Biotek filed a separate motion for summary judgment arguing, inter alia, that the Wades could not be held liable for tortious interference since they were not strangers to the contract between Hammer and Contract Packaging.[4] Hammer filed a cross-motion for partial summary judgment, asserting that Contract Packaging owed over $300,000 in royalty payments for sales between May 2002 and February 2003.

In its order, the trial court agreed that Contract Packaging and Village Consumer Products owed Hammer royalties of $256,403.06. However, the trial court found that "Hammer cannot collect these unpaid royalties because its sole remedy against [Contract Packaging] and [Village Consumer Products] in case of default is limited to the return of Hammer's List I Efedrin and/or Ephedrine assets." Thus, the trial court granted the defendants' motion for summary judgment on this basis. The trial court also found that it lacked personal jurisdiction over the Wades and that, in any event, the

---

[4] The Wades also moved to dismiss the complaint against them for lack of personal jurisdiction.

tortious interference claim against them could not stand because the Wades were not strangers to the contract.[5]

Hammer appeals, arguing that the trial court erred in holding that it "cannot collect the [money] it is owed for unpaid royalties." In a related argument, Hammer asserts that it is entitled to additional royalties based on the sale of Biotek ephedrine products. Hammer also contends that the trial court erred in granting summary judgment to the Wades, asserting that the Wades, in their personal capacities, are strangers to the contract between Contract Packaging and Hammer and thus may be held liable for tortiously interfering with that contract.

1. In its order, the trial court found that Hammer could not collect on unpaid royalties because the only remedy provided in the amended promissory note was for Hammer to seek the return of its assets. Hammer challenges this ruling on appeal, although its argument is unclear. Hammer seems to suggest that the trial court erred in interpreting the amended promissory note to limit its remedies. We disagree.

In Georgia, the construction of contracts — which is a three-step process — is at the outset a matter for the courts.[6] First, the court must decide whether the language of the contract is clear and unambiguous.[7] "[L]anguage is unambiguous if it is capable of only one reasonable interpretation."[8] If a contract contains no ambiguity, the court enforces the agreement according to its clear terms, and the contract alone is looked to for its meaning.[9] Second, if the contract contains an ambiguity, the court applies the rules of construction to resolve such ambiguity.[10] Third, if the ambiguity cannot be resolved in this manner, a jury must decide what the parties intended.[11] In this case, we need look no further than the first step.

Under the amended promissory note, Village Consumer Products was responsible for paying Hammer a monthly amount based upon the quantity of ephedrine products sold in the preceding month, and Contract Packaging guaranteed this note. It is this note that the two defendants are alleged to have violated by improperly calculating the ephedrine products sold and by failing to make payments due.

---

[5] To the extent Hammer's complaint can be construed as raising a tortious interference claim against Biotek, the trial court denied the motion for summary judgment with respect to this claim. Biotek does not appeal this ruling, and thus we do not address it on appeal.

[6] See *Marvel Enterprises v. World Wrestling &c.*, 271 Ga. App. 607, 610 (2) (610 SE2d 583) (2005).

[7] See id.

[8] *Caswell v. Anderson*, 241 Ga. App. 703, 705 (527 SE2d 582) (2000).

[9] See *Marvel Enterprises*, supra.

[10] See id.

[11] See id.

However, the amended note expressly provides that, in the event of default, Hammer's *"sole remedy* hereunder [is] to exercise its remedies as a secured party under Article 9 of the Uniform Commercial Code . . . to foreclose [its] security interest in the collateral described in the Assignment and Bill of Sale in full satisfaction of this Note."[12] Given this unambiguous language, the trial court properly construed the contract as limiting Hammer's remedy to foreclosure proceedings — a remedy not sought by Hammer in either its complaint or its amended complaint.[13]

According to Hammer, the trial court improperly invoked this limitation, which applied only in the event of a default. Hammer argues that Village Consumer Products and Contract Packaging did not default on the agreement, but merely breached it. We find this argument disingenuous. The amended promissory note defined default to include a "fail[ure] to pay any amount due hereunder (whether such amount due is for payment of principal or interest) as and when due." And the crux of Hammer's complaint against Village Consumer Products and Contract Packaging is that the two defendants failed to pay amounts due under the note. It follows that this argument lacks merit. In view of our holding in this Division, we need not address Hammer's argument that it is entitled to additional royalties under the agreement.

2. Hammer also contends that the trial court erred in granting summary judgment in favor of the Wades on the tortious interference claim. Again, we disagree. It is axiomatic that to be held liable for tortiously interfering with a contract, the alleged tortfeasor must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract.[14] If the defendant in a tortious interference action has a legitimate economic interest in either the contract or a party to the contract, then that defendant cannot be considered a stranger to the contract.[15] Moreover, "[w]here a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract."[16] Here, the evidence shows that the Wades not only

---

[12] (Emphasis supplied.)

[13] See *Nobel Lodging, Inc. v. Holiday Hospitality Franchising*, 249 Ga. App. 497, 498 (1) (548 SE2d 481) (2001); *Marvel Enterprises*, supra at 612.

[14] See *Mau, Inc. v. Human Technologies*, 274 Ga. App. 891, 896 (2) (619 SE2d 394) (2005); *Tidikis v. Network for Med. Communications &c.*, 274 Ga. App. 807, 812 (4) (619 SE2d 481) (2005); *Atlanta &c. Surgical Assoc. v. DeKalb Med. Center*, 273 Ga. App. 355, 356-357 (2) (615 SE2d 166) (2005); *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 608-609 (2) (503 SE2d 278) (1998).

[15] See *Tidikis*, supra.

[16] Id. at 813.

signed various portions of the Assignment and Bill of Sale and related promissory notes on behalf of Contract Packaging and Village Consumer Products, they were also the sole officers and directors of these two companies. Under these circumstances, they were unquestionably *not* strangers to the contract, and thus the trial court properly granted them summary judgment on the tortious interference claim.[17]

3. Our ruling in Division 2 renders Hammer's remaining enumeration of error moot.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 14, 2006.

*Nelson, Mullins, Riley & Scarborough, Kenneth L. Millwood*, for appellant.

*King & Spalding, W. Ray Persons, Stephen P. Cummings II*, for appellees.

[17] See *Atlanta &c. Surgical Assoc.*, supra.