A06A1841, A06A1842. CS-LAKEVIEW AT GWINNETT, INC. v. SIMON PROPERTY GROUP, INC. et al.; and vice versa.

(642 SE2d 393)

MIKELL, Judge.

In the wake of their failed joint venture concerning a commercial property in Gwinnett County, CS-Lakeview at Gwinnett, Inc. (CS-Lakeview), and Simon Property Group, Inc., and its related entities (Simon) entered into a settlement agreement under which CS-Lakeview gained a right of first refusal should Simon obtain a third-party offer as to the Gwinnett property. When such an offer materialized, however, the parties differed as to the procedures to follow, and CS-Lakeview sued Simon and others for breach of contract and other claims. The trial court granted summary judgment to Simon on the ground that CS-Lakeview's right of first refusal was invalid under Delaware's rule against perpetuities, but allowed CS-Lakeview's unjust enrichment claim to go forward. Both parties now appeal. We conclude that none of CS-Lakeview's claims are viable. We therefore affirm in Case No. A06A1841 and reverse in Case No. A06A1842.

The relevant facts are not in dispute. In 1985, CS-Lakeview and the Simon Property Group, both of which are Delaware corporations, began a joint venture to develop 133 acres of land in Gwinnett County. Disputes arose, and Simon sued CS-Lakeview in Delaware Chancery

---

Court in 1994. In the settlement agreement reached late the following year, Simon received the Gwinnett property, while CS-Lakeview retained a right of first refusal under which it could match any "bona fide" offer received "at any time after November 30, 1995." Among other things, the settlement agreement provided that the parties would "take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of [the] Agreement" and that it was "subject to and construed in accordance with the laws of the state of Delaware."

In May 2000, Simon gave CS-Lakeview notice that Retail Development Partners (RDP) had made a "bona fide" offer of $5.5 million for the Gwinnett property. When CS-Lakeview asked for additional information, however, Simon reported that it had not yet received a written offer on the property. To avoid litigation over CS-Lakeview's right of first refusal, Simon proposed an option agreement based on RDP's tentative price of $5.5 million. The parties negotiated a license under which CS-Lakeview would inspect the property to determine its prospects for development, but failed to reach agreement on the remaining terms of the option agreement. On October 6, 2000, CS-Lakeview offered $3.85 million for the Gwinnett property.[1] Soon afterward, Simon rejected this offer, although CS-Lakeview objected that its right had been ignored. In June 2001, Simon sold the Gwinnett property to RDP for the same $5.5 million price it had quoted to CS-Lakeview the previous October.

On March 1, 2002, CS-Lakeview filed a breach of contract action against Simon and associated entities. CS-Lakeview later added Chicago Title Insurance Company (CTIC) as a defendant, alleging tortious interference with contract, fraudulent conveyance, civil conspiracy and other claims. CS-Lakeview also sued RDP in federal court. The federal district court granted summary judgment to RDP on grounds including that the right of first refusal was void under Delaware's rule against perpetuities. After the Eleventh Circuit affirmed on other grounds, the trial court in this case revisited the choice-of-law issue on Simon's motion for summary judgment and also held that CS-Lakeview's right of first refusal was invalid because it violated Delaware's rule against perpetuities. The trial court denied Simon's motion as to CS-Lakeview's unjust enrichment claim, however.

---

[1] One of CS-Lakeview's business associates testified that no larger offer was made because the entity was in the "embarrassing situation" of not being able to obtain the larger amount.

*Case No. A06A1841*

1. CS-Lakeview first argues that the trial court erred when it granted summary judgment to Simon on its breach of contract claim. We disagree.

This case is governed by well-established conflict-of-law principles. Under OCGA § 11-1-105 (1), "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."[2] "Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."[3] As we have previously explained:

> [A] contract should not be held unenforceable as being in contravention of public policy except in cases free from substantial doubt where the prejudice to the public interest clearly appears. Enforcement of a contract or a contract provision which is valid by the law governing the contract will not be denied on the ground of public policy, unless a strong case for such action is presented; *mere dissimilarity of law is not sufficient for application of the public policy doctrine.*[4]

Applying these principles to this case, it is plain that the settlement agreement at issue here bears a "reasonable relation" to the state of Delaware and its laws. CS-Lakeview and Simon Property Group are both Delaware corporations, the settlement agreement ended a lawsuit filed in Delaware, and the parties chose to construe that agreement under Delaware law. As the Supreme Court of Georgia noted long ago as it enforced a note executed in Georgia but payable elsewhere:

> To construe this note and mortgage as we have done works injustice to no one, but puts the parties where they manifestly intended to put themselves. . . . The contract being

---

[2] See also *Lafitte v. Lawton*, 25 Ga. 305, 308 (1858) (construing marriage settlement entered into in South Carolina concerning land in Georgia under South Carolina law); Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure, § 1-4 (6th ed. 2004), p. 10 ("resort may be had to the law of other states in determining the intentions of the parties to contracts who resided in other states at the time of execution, even though so doing may incidentally affect title to realty in Georgia") (footnotes omitted).

[3] (Citations omitted.) *Carr v. Kupfer*, 250 Ga. 106, 107 (1) (296 SE2d 560) (1982), citing *New England Mtg. Security Co. v. McLaughlin*, 87 Ga. 1 (13 SE 81) (1891).

[4] (Citations and punctuation omitted; emphasis supplied.) *Nationwide Gen. Ins. Co. v. Parnham*, 182 Ga. App. 823, 825 (4) (357 SE2d 139) (1987).

under our laws perfectly legal, [the defendant] cannot and ought not to expect the courts of this State to release him from his solemn and deliberate undertakings.[5]

Despite its own negotiated choice of Delaware law, CS-Lakeview argues that its right of first refusal is governed by and valid under Georgia law. Specifically, it asserts that the right, though a future interest in property, is exempt from Georgia's version of the Uniform Statutory Rule against Perpetuities, which "shall not apply to . . . [a] nonvested property interest . . . arising out of a nondonative transfer."[6] A contractual right of first refusal is neither a property interest nor a "nonvested" version of the same, however. Instead, a right of first refusal is a personal and contractual right under Georgia law, and does not run with the land as to which the right is given.[7]

It is true that Delaware law goes further than Georgia's in its pursuit of a policy favoring the alienability of land, as when Delaware disallows a right of first refusal with an unlimited duration.[8] But this difference does not necessarily signify that such a right violates Georgia public policy. In *Shiver v. Benton*,[9] for example, a co-tenant filed suit to enjoin a sale of property as in violation of a first refusal agreement without any explicit time limit.[10] Our Supreme Court held that when a right of first refusal "is not tied to a fixed price method or some method of pricing which may not reflect true market value, but is conditioned upon meeting a sale price which the seller is willing to accept, [such an a]greement encourages the development of [a] property to its fullest potential."[11] Since the right of first refusal at issue was "compatible with the policies of commerce and utilization of land," the *Shiver* court concluded that the right neither violated Georgia's rule against perpetuities nor acted as an illegal restraint on alienation.[12]

Like the provision at issue in *Shiver*, CS-Lakeview's bargained-for right of first refusal allowed it to participate in the open market for the Gwinnett property by giving it a chance to buy at a price reached in that market. Georgia public policy does not bar such provisions.

---

[5] *New England Mtg. Security Co.*, supra at 5-6.

[6] OCGA § 44-6-204 (1).

[7] See *Ricketson v. Bankers First Sav. Bank*, 233 Ga. App. 11, 13-14 (1) (503 SE2d 297) (1998); *Hasty v. Health Svc. Centers*, 258 Ga. 625 (373 SE2d 356) (1988).

[8] See *Stuart Kingston, Inc. v. Robinson*, 596 A2d 1378, 1384-1385 (III) (Del. 1991).

[9] 251 Ga. 284 (304 SE2d 903) (1983).

[10] Id.

[11] Id. at 286 (1).

[12] Id. at 287 (1).

But we respect the parties' selection of Delaware law and conclude that Delaware law voids that right.[13]

2. CS-Lakeview also contends that if its right of first refusal is invalid, the trial court erred in failing (a) to reform the settlement agreement so as to remedy the parties' mutual mistake in choosing Delaware law, which invalidates the right, in favor of Georgia law, which authorizes the right; or (b) to require Simon to execute a document agreeing to apply Georgia law. There is nothing in the record, however, to contradict the conclusion that the parties intended the right of first refusal to be of unlimited duration. As in *Thomas v. Murrow*,[14] "[t]he question is whether or not the manner in which the parties reflected [their] intention" — here, the settlement provision containing the right of first refusal — "violates the rule against perpetuities."[15]

Division 1 holds that the settlement provision does indeed violate Delaware's version of the rule. OCGA § 23-2-27 provides that "where the facts are all known and there is no misplaced confidence and no artifice, deception, or fraudulent practice is used . . . , [a party's mere ignorance of the law] shall not authorize the intervention of equity." As Georgia courts have often held, then, the trial court did not err when it denied CS-Lakeview equitable relief for its mere ignorance of applicable Delaware law.[16]

3. Finally, CS-Lakeview argues that the trial court erred when it granted summary judgment to CTIC concerning CS-Lakeview's claims for tortious interference and other wrongs. We disagree.

A plaintiff asserting tortious interference with a contractual relationship must show that the defendant "(1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff financial injury."[17]

---

[13] See *Stuart Kingston*, supra (right of first refusal with unlimited duration violates Delaware's rule against perpetuities); see also *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 725 (1) (389 SE2d 251) (1989) (honoring contract's choice of Alabama law concerning employment and stock agreements); *Nationwide Gen.*, supra at 825-826 (4) (honoring contract's choice of Texas law concerning claim under Texas insurance policy); compare *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (2) (238 SE2d 368) (1977) (because validity of covenants not to disclose was a matter of Georgia public policy, trial court correctly disregarded contract's choice of Tennessee law).

[14] 245 Ga. 38 (262 SE2d 802) (1980).

[15] Id. at 39 (2).

[16] Id.; see also *Robbins v. Nat. Bank of Ga.*, 241 Ga. 538, 543-544 (2) (246 SE2d 660) (1978).

[17] (Citation and punctuation omitted.) *Atlanta Multispecialty Surgical Assoc. v. DeKalb Med. Center*, 273 Ga. App. 355, 356 (2) (615 SE2d 166) (2005).

The record shows that as a result of RDP's concerns about CS-Lakeview's right of first refusal, and in exchange for an agreement to indemnify CTIC against "any claims arising out of the [right of first refusal,]" Simon obtained title insurance from CTIC. There is nothing in the record, however, to support a finding that CTIC committed any wrongful act, including the inducement of Simon to breach CS-Lakeview's right of first refusal. By November 2000, Simon had decided to sell the Gwinnett property to RDP, whereas CTIC did not agree to issue its title insurance policy until June 2001. Like the trial court, the federal district court, and the Eleventh Circuit before us, we conclude that because CTIC could not have induced Simon's alleged breach, CS-Lakeview's claim for tortious interference, as well as its claims for civil conspiracy, punitive damages and fees arising from the same transaction, must therefore fail.[18]

## *Case No. A06A1842*

4. In the companion case, Simon cross-appeals from the trial court's denial of its summary judgment motion as to CS-Lakeview's unjust enrichment claim. The trial court held that because CS-Lakeview likely would not have agreed to the settlement agreement without the inclusion of its right of first refusal, a question of fact remained as to whether the invalidation of that right would unjustly enrich Simon. Simon now reasserts arguments made below that CS-Lakeview actually received its bargained-for right and that its unjust enrichment claim is time-barred.

Here, only one part of the settlement agreement has been held invalid, and the agreement contains a severability clause asserting that "[i]f any part or provision of this agreement should be held void or invalid, the remaining provisions shall remain in full force and effect." "A severability clause indicates the intent of the parties where the remainder of the contract can exist without the void portion."[19] The law of unjust enrichment applies, moreover, only when there is no express contract between the parties.[20]

We have held in Division 2 above that CS-Lakeview cannot turn to equity to reform the settlement agreement. It is likewise true, then, that it cannot obtain equitable compensation for any alleged unjust

---

[18] See id. (when one element of tortious interference fails, the entire claim fails); *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 67-68 (3) (537 SE2d 670) (2000) (granting summary judgment on punitive damages dependent on claim for breach of fiduciary duty).

[19] (Citations omitted.) *Capricorn Systems v. Pednekar*, 248 Ga. App. 424, 428-429 (2) (d) (546 SE2d 554) (2001); see also OCGA § 13-1-8.

[20] See *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586, 593 (3) (631 SE2d 792) (2006).

enrichment arising from the invalidation of a bargained-for term in that valid contract when it contains a severability clause.[21] Finally, even if the law of unjust enrichment were available to CS-Lakeview, its own complaint shows that it received the right it bargained for when Simon informed it of RDP's "bona fide" offer of $5.5 million for the Gwinnett property. For these reasons, we reverse the trial court's denial of Simon's motion for summary judgment on CS-Lakeview's unjust enrichment claim, and need not reach Simon's contention that this claim is time-barred.

*Judgment affirmed in Case No. A06A1841 and reversed in Case No. A06A1842. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 22, 2007 — 

*Mayfield, Commander & Pound, William S. Mayfield, Constance E. Rodts*, for appellant.

*Morris, Manning & Martin, John F. Manning, Donald A. Loft, Ross A. Albert*, for appellees.

---

[21] See id. (affirming dismissal of unjust enrichment claim when parties entered into valid contract); *Capricorn*, supra at 426-429 (2) (a)-(d) (invalidating restrictive covenant, but enforcing employment contract containing severability clause); compare *Imerman v. London*, 255 Ga. App. 140 (564 SE2d 544) (2002) (refusing to find global settlement agreement severable without noting whether agreement had severability clause).